# Exhibit 2

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY  PENNSYLVANIA,
CIVIL DIVISION

FRANK FRANCI
and RANDY BUMBAUGH,
on behalf of themselves and
all others similarly situated,
          Plaintiffs
   V.

GD-24- 4220

CHAMBERS DEVELOPMENT
COMPANY, INC.
       Defendant

JURY TRIAL DEMANDED

**Filed on behalf of:**
FRANK FRANCI
and RANDY BUMBAUGH

**Counsel of Record:**
James E. DePasquale, Esquire
Pa. I.D. #30223
1302 Grant Building
310 Grant Street
Pittsburgh, PA 15219
(412) 471-1415

JAMES E. DE PASQUALE
Attorney ID: 30223
1302 Grant Building • 310 Grant Street
Pittsburgh, PA 15219
T: (412) 471-1415
E: jim.depasquale@verizon.net
*Attorney for the Plaintiffs*

---

FRANK FRANCI and RANDY
BUMBAUGH, on behalf of themselves and
all others similarly situated,

    *Proposed Class*
    *Action Plaintiffs*

    vs

CHAMBERS DEVELOPMENT
COMPANY, INC.

    *Defendant*

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY
PENNSYLVANIA

Case No.:

**Jury Trial Demanded**

## NOTICE TO DEFEND

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any claim or relief requested by the plaintiffs. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

**Lawyer Referral Service**
**Allegheny County Bar Association**
**400 Koppers Building**
**436 Seventh Ave.**
**Pittsburgh, PA 15219**
**T: (412) 261-6161**
**lrs.westbar.org**

JAMES E. DE PASQUALE
Attorney ID: 30223
1302 Grant Building • 310 Grant Street
Pittsburgh, PA 15219
T: (412) 471-1415
E: jim.depasquale@verizon.net
*Attorney for the Plaintiffs*

FRANK FRANCI and RANDY
BUMBAUGH, on behalf of themselves and
all others similarly situated,

  *Proposed Class*
  *Action Plaintiffs*

  vs

CHAMBERS DEVELOPMENT
COMPANY, INC.

  *Defendant*

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY
PENNSYLVANIA

Case No.:

**Jury Trial Demanded**

## CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. Plaintiffs Frank Franci and Randy Bumbaugh, on behalf of themselves and all others similarly situated, bring this class action against Chambers Development Company, Inc. (the "**Defendant**") in relation to its ownership and operation of a landfill located at 600 Thomas Ave., Town of Monroeville, County of Allegheny, Commonwealth of Pennsylvania (the "**Landfill**").

2. Through the Defendant's operation and maintenance of the Landfill, it wrongfully and tortiously releases substantial and unreasonable noxious odors that invade the Plaintiffs' and putative Class's properties, causing damages through private nuisance, public nuisance, and negligence.

2

## THE PARTIES

3.    Plaintiff Frank Franci owns and resides at a home located at 2748 5th Street, City of Monroeville, County of Allegheny, Commonwealth of Pennsylvania.

4.    Plaintiff Randy Bumbaugh owns and resides at a home located at 258 Willow Drive, City of Monroeville, County of Allegheny, Commonwealth of Pennsylvania.

5.    Defendant Chambers Development Company, Inc., is a Delaware corporation with its principal place of business at 310 Leger Road, North Huntingdon Township, Commonwealth of Pennsylvania 15642. Defendant, Defendant's agents, and its predecessors constructed, own, operate and/or maintain the Monroeville Landfill Management Facility, located at 600 Thomas Avenue, City of Monroeville, County of Allegheny, Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

6.    This Court has personal jurisdiction over the Defendant pursuant to 42 Pa. C.S. § 5301 because the Defendant carries on a continuous and systematic part of its general business within the Commonwealth of Pennsylvania.

7.    This Court has original subject matter jurisdiction over this action pursuant to 42 Pa. C.S. § 931.

8.    Venue is proper under Pa. R.C.P. No. 2179 because the Defendant regularly conducts business in this County and the cause of action arose in this County.

## GENERAL ALLEGATIONS

9.    The Defendant, its predecessors, and/or its agents constructed or directed the construction of the Landfill.

10.    The Defendant own and operate the Landfill, which is on a large plot surrounded by residential properties.

3

11. The Plaintiffs and the putative Class ("Class" defined below) reside within 1.0 mile of the Landfill property boundary (the **"Class Area"**).

12. On recurrent and intermittent occasions, Plaintiffs' property including Plaintiffs' neighborhoods, residences and yards have been and continue to be physically invaded by noxious odors, pollutants, and air contaminants.

13. The noxious odors, pollutants, and air contaminants which entered Plaintiffs' property originated from the Monroeville Landfill Management Facility located at 600 Thomas Avenue, City of Monroeville, County of Allegheny, Commonwealth of Pennsylvania

14. The Plaintiffs' and putative Class' properties have been, and continue to be, physically invaded by fugitive noxious odors emitted from the Landfill.

15. The Landfill accepts, processes, and stores substantial quantities of waste materials including, but not limited to: biosolids, municipal solid waste, construction and demolition debris, auto shredder fluff, and sandblast media.

16. The materials deposited into the Landfill decompose and generate byproducts, including leachate and landfill gas, which generally consists of hydrogen sulfide, methane, carbon dioxide, and other various compounds. These byproducts can be particularly odorous and offensive when not managed properly, giving off a characteristic "rotten egg" smell.

17. A properly designed, operated, and maintained landfill will adequately capture, process, and remove leachate and landfill gas in order to prevent it from escaping into the ambient air as fugitive emissions.

18. Biosolids are solid organic materials generated from wastewater treatment. As part of its disposal process, biosolids are dewatered to reduce the liquid and moisture concentration.

4

Methods for dewatering include but are not limited to drying beds, centrifugation, and belt filter pressing.

19.     Upon information and belief, the EPA defines landfilling biosolids at a landfill combining biosolids with municipal solid waste as a co-disposal landfill. The landfilling process of biosolids at a co-disposal landfill generally involves layering solid waste in a specific area then spreading the biosolids over the solid waste and mixing the two using machinery.[1]

20.     A properly, designed, operated, and maintained landfill will adequately capture and process fumes produced from landfilling biosolids to prevent it from escaping into the ambient air as fugitive emissions.

21.     Upon information and belief, construction and demolition debris consist of waste generated from the construction and demolition of roads, buildings, and other structures.

22.     Upon information and belief, construction and demolition debris are commonly transported to permitted landfills then weighed to determine the waste quantity being taken in. Once weighed, the waste is disposed of in a designated area of the landfill. Once that area is filled, it is commonly covered with soil or some other material to prevent odors.

23.     Upon information and belief, auto shredder fluff refers to the left-over material from automobiles when shredded for recycling. To dispose of auto shredder fluff, the materials are commonly pre-treated to remove valuable materials and limit the bulk of the waste. Once pre-treated, the auto shredder fluff is disposed of in a designated area within a landfill.

24.     Upon information and belief, sandblast media are abrasive particles used in the blasting process to change the properties of a surface. Common forms of sandblast media include but are not limited to sand, steel grit, aluminum oxide, and glass beads.

---

[1] P:\WTC-Studies\EPA Contract\04 Fact Sheets\Option Year 2 -
742092\Deliverables-Final\Landfilling for Biosolids Management Final

25.     The Defendant is required to control noxious odor emissions by, among other things, operating the Landfill in a manner that adequately captures, controls, and mitigates odor emissions to prevent them from escaping into the ambient air surrounding the Landfill, and by implementing other reasonably available odor mitigation, elimination, and control systems at the Landfill.

26.     The Defendant has failed to use adequate odor mitigation strategies, processes, technologies, and equipment to control noxious odor emissions from the Landfill and prevent those odors from invading the homes and properties of the Plaintiffs and putative Class.

27.     The Defendant's failures to prevent off-site emissions include, but are not limited to:

        a)  Failing to install, maintain, and operate an adequate landfill gas collection system;

        b)  Insufficient monitoring of the Landfill;

        c)  Using inadequate cover and cover practices;

        d)  Inadequate collection, management and disposal of leachate;

        e)  Failing to purchase, possess, and maintain appropriate equipment;

        f)  Improper and/or excessive processing of construction and demolition waste;

        g)  Engaging in excavation without adequate erosion or sedimentation controls; and

        h)  The failure to use other odor mitigation and control techniques that are available.

### *Landfill Complaints and Community Involvement*

28.     The Landfill and its noxious emissions have been the subject of frequent complaints by citizens in the nearby residential area.

29.     Noxious odor emissions from the Landfill have interfered with activities in the surrounding areas, and they have precluded the reasonable use and enjoyment of private and public spaces in those areas.

30.     Dozens of households within the proposed Class Area have contacted Plaintiffs' counsel in relation to noxious odors originating from the Landfill.

31.     Plaintiff Franci reported that he often experiences a lack of sleep from being continuously woken up by the odors emanating from Defendant's Landfill.

32.     Plaintiff Bumbaugh reported that the "odor is so bad it makes the inside of your house smell".

33.     Below is a small sample of what members of the putative Class have conveyed to Plaintiffs' counsel:

a) Putative class members, Mary and Terrence Gisi, reported that "the odor is so strong some days that the doors closed, and windows don't stop if from coming in. We can't sit outside when it's warm out or open windows and doors. It's a putrid smell that's nauseating."

b) Putative class member, Donna Capo-Gibson, reported "the odor is terrible. It makes me gag. It stops me from going outside of my house and doing things outside. It stops me from opening windows because the smell is so bad it definitely affects me enjoying my home."

c) Putative Class members, Jermaine and Jennifer Bracy, reported that the odors are "disgusting, toxic, and nauseating. Sometimes, it's so strong we can't even open our windows or go outside", and that "we regret that we bought this house because of it… it definitely affects our quality of life."

d) Putative Class member Ruth Ray stated that "there are times when the odor is so bad that you cannot enjoy being outside, the smell reminds of rotten eggs (sulfur). I have also smelled the odors inside, which resembles raw sewage, and/or also smelled gas."

7

34.   The Defendant's well-documented pattern of failing to control the Landfill's offensive emissions is further demonstrated by the following:

a) Upon information and belief, the Pitcairn Fire Department has been called numerous times due to repeated gas-like odors emitted by the Defendant into the surrounding community.

i. In December 2023, Pitcairn's Emergency Management Coordinator, Nick Turner, stated that in response to calls from residents, his crews metered the surrounding area of the Landfill and found "explosive and toxic" readings.[2] The readings increased in severity the closer the Fire Department got to the Landfill.

b) Numerous residents have filed complaints with the Pennsylvania Department of Environmental Protection ("PDEP"), concerning noxious odors emitted from Defendant's landfill. Those complaints include, but are not limited to:

i. On October 21, 2023, PDEP addressed a complaint, stating "on October the 20th, we had a complaint. Our fire department was out. It was methane gas. This has been recurring. The landfill surrounds one side of our town and it's a big concern to us."

ii. On December 15, 2023, a caller reported, "I am right now smelling gas from what I believe is the dump. We were told by the politicians in the town to give the DEP a complaint...I did call 911 as well to make sure that it wasn't any kind of gas smell."

iii. On December 17, 2023, PDEP received three odor-related complaints, including one complainant stating the smell was, "overwhelmingly strong. The firemen are out there again. They've been out there a lot and it's making people nauseous. It's really overpowering."

c) On December 18, 2023, the Borough of Pitcairn's mayor Betsy Stevick issued a formal letter to Pennsylvania Governor Josh Shapiro stating:

i. Odor complaints regarding foul smells emanating from Defendant's Landfill have recently become more frequent.

ii. The Borough of Pitcairn has reached out to both Allegheny County Health Department and PADEP for assistance. Both entities have offered help,

---

https://triblive.com/community/monroeville/pitcairn-emergency-management-coordinator-wants-eye-watering-odor-addressed/a62b0ffee6eca08bb8afade6f97f9f47/

however Stevick states their involvement has been limited, and that more investigation needs to be done to resolve the odor issue.

35.     The Landfill has emitted, and continues to emit, preventable noxious odors beyond the bounds of its property.

36.     The noxious odors are offensive to the Plaintiffs and putative Class Members and would be offensive to reasonable people of ordinary health and sensibilities.

37.     The noxious odors have caused property damage and substantially interfered with the abilities of the Plaintiffs and the putative Class to reasonably use and enjoy their homes and properties.

38.     The invasion of the Plaintiffs' and putative Class' properties by the noxious odors has reduced the value of those properties.

39.     The Plaintiffs and the putative Class are a limited subset of individuals in Allegheny County and the Class Area, which includes only owners/occupants and renters of residential properties who live within the Class Area and fit within the Class definition.

40.     Members of the public including, but not limited to, businesses, employees, commuters, tourists, visitors, minors, customers, clients, students, and patients have been harmed by the fugitive noxious odors emitted from the Landfill into public spaces. However, unlike the Plaintiffs and the putative Class, members of the public who are outside of the Class definition have not suffered damages in the form of diminished property values and/or the loss of use and enjoyment of their private property.

41.     The Defendant knew about its substantial noxious odor emissions through numerous complaints, warnings, and significant media attention throughout the Borough of Pitcairn.

9

42.     The Defendant intentionally, knowingly, willfully, recklessly, and/or negligently failed to properly construct, maintain, and/or operate the Landfill. The Defendant caused a physical invasion of the Plaintiffs' and putative Class' properties by noxious odors on frequent, intermittent, and reoccurring occasions too numerous to list individually.

43.     The Defendant is vicariously liable for all damages suffered by the Plaintiffs and the putative Class that were caused by the Defendant's employees, representatives, and agents, who, in the course and scope of their employment, created, allowed, or failed to correct the deficiencies which caused noxious odors to physically invade the Plaintiffs' and putative Class' properties.

## CLASS ALLEGATIONS

### A. Definition of the Class

44.     The Plaintiffs brings this action individually and on behalf of all persons that the Court may determine to be appropriate for class certification, pursuant to 231 Pa. Code § 1700 (the "**Class**" or "**Class Members**"). The Plaintiffs seeks to represent a Class of persons preliminarily defined as:

> **All owners/occupants and renters of residential property within one (1) mile of the Landfill property boundary.**

The definitional Class boundary is subject to modification as discovery discloses the location of all persons properly included in the Class. The Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such sub-classes are appropriate.

45.     This case is properly maintainable as a class action pursuant to and in accordance with 231 Pa. Code § 1700 in that:

a) The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

10

b) There are substantial questions of law and fact common to the Class, including those set forth in greater particularity herein;

c) Questions of law and fact, such as those enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

d) The claims of the representative parties are typical of the claims of the Class;

e) A class action provides a fair and efficient method for adjudication of the controversy;

f) The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

g) There are no unusual difficulties foreseen in the management of this class action; and

h) The Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

## B. Numerosity

46.    There are approximately 2,700 separate residences within the Class Area. Accordingly, the members of the Class are so numerous that joinder of all parties is clearly impracticable.

47.    The prosecution of separate lawsuits by Class Members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is, therefore, appropriate.

## C. Commonality

48.    Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

a) Whether and how the Defendant wrongfully, intentionally, knowingly, recklessly, and/or negligently failed to maintain and operate the Landfill, causing noxious odors to invade their properties;

11

b) Whether the Defendant owed any duties to the Class Members;

c) Which duties the Defendant owed to the Class Members;

d) Which steps the Defendant has and has not taken in order to control the emission of noxious odors through the maintenance and operation of the Landfill;

e) Whether and to what extent the Landfill's noxious odors were dispersed over the Class Area;

f) Whether it was reasonably foreseeable that the Defendant's failure to properly maintain and operate the Landfill would result in an invasion of the Class Members' property interests;

g) Whether the degree of harm suffered by the Class Members constitutes a substantial annoyance or interference with their use and enjoyment of their properties; and

h) The proper measure of damages incurred by the Class Members.

**D. Typicality**

49.     The claims of the named Plaintiffs are typical of the claims of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence (e.g. expert testimony), rely upon the same legal theories, and seek the same type of relief.

50.     The claims of the named Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failures of the Defendant to properly maintain and operate the Landfill.

51.     All Class Members have suffered injury in fact as a result of the invasion of their properties by noxious odors emitted by the Defendant's Landfill. The noxious odors interfere with their ability to use and enjoy their homes and have diminished their property values.

**E. Adequacy of Representation**

12

52.     The Plaintiffs' claims are sufficiently aligned with the interests of the absent Class

Members to ensure that the Class' claims will be prosecuted with diligence and care by the

Plaintiffs as representatives of the Class. The Plaintiffs will fairly and adequately represent the

interests of the Class and they do not have interests adverse to the Class.

53.     The Plaintiffs have retained the services of counsel who are experienced in complex

class action litigation, and in particular class actions involving environmental concerns, including

the emission of noxious odors. Plaintiffs' counsel will vigorously prosecute this action, and will

otherwise protect and fairly and adequately represent the Plaintiffs and all absent Class Members.

**F.  Class Treatment Is The Superior Method of Adjudication**

54.     A class action is superior to other methods for the fair and efficient adjudication of

the controversies raised in this Complaint because:

- a) Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

- b) Individual claims by Class Members would create a risk of inconsistent or varying adjudications, which would present the Defendant with incompatible standards of conduct;

- c) Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

- d) Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

- e) In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

f)  The Plaintiffs seek equitable relief relating to the Defendant's common actions and failures to act, and the equitable relief sought would commonly benefit the Class as a whole;

g)  Litigating these claims in one action will achieve efficiency and promote judicial economy; and

h)  The proposed class action is manageable.

55.     Notice can be provided to Class Members by U.S. Mail and/or publication.

## CAUSE OF ACTION I
## PRIVATE NUISANCE

56.     The Plaintiffs restate all allegations of this Complaint as if fully restated herein.

57.     The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to prevent and abate the unreasonable interference with, and the invasion of, their private property interests.

58.     The noxious odors which entered the Plaintiffs' and Class' properties originated from the Landfill, which was improperly and unreasonably constructed, maintained, and/or operated by the Defendant.

59.     The noxious odors invading the Plaintiffs' and Class' properties are indecent and offensive to people with ordinary health and sensibilities, and they obstruct the free use of their properties so as to substantially and unreasonably interfere with the enjoyment of life and property. This includes but is not limited to:

a)  Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

b)  Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

14

    c) Depriving the Plaintiffs and Class Members of the value of their homes and properties;

    d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and discomfort including, but not limited to, creating a reluctance to invite guests to their homes and preventing the Plaintiffs and Class Members from utilizing the outdoor areas of their respective properties.

60.    The Plaintiffs' and Class' properties are situated in such proximity to the Defendant's Landfill as to constitute "neighboring" properties, in that they are near enough to be impacted by the tangible effects of noxious odors emitted from the Landfill.

61.    By constructing and then failing to reasonably repair, maintain, and operate the Landfill, thereby causing noxious odors to physically invade the Plaintiffs' and Class' properties, the Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and Class' properties.

62.    As a foreseeable, direct, and proximate result of the forgoing misconduct of the Defendant, the Plaintiffs and the Class suffered damages to their properties as alleged herein.

63.    The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's noxious odors, which is ongoing and which constitutes a nuisance.

64.    Any social utility that is provided by the Landfill is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

65.    The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class' use and enjoyment of their properties constitutes a private nuisance. The Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

## CAUSE OF ACTION II
### PUBLIC NUISANCE

66.   The Plaintiffs restate all allegations of this Complaint as if fully restated herein.

67.   The Plaintiffs and Class utilize their properties as residences and reside within the Class Area.

68.   The noxious odors which entered the Plaintiffs' and Class' properties originated from the Landfill, which is in close proximity to the Class Area.

69.   The unreasonable noxious odors emitted by the Defendant's Landfill have been, and continue to be, dispersed across public and private land throughout the Class Area.

70.   The Defendant's noxious odors have interfered with the public's right to unpolluted and uncontaminated air.

71.   By failing to reasonably design, operate, repair, and maintain the Landfill, the Defendant has caused an invasion of the Plaintiffs' and Class' properties by noxious odors on frequent occasions that are too numerous to individually list herein.

72.   The noxious odors invading the Plaintiffs' and Class' properties are indecent and offensive to people with ordinary health and sensibilities. They obstruct the free use of the Plaintiffs' and Class' properties so as to substantially and unreasonably interfere with the enjoyment of life and property. This includes, but is not limited to:

a)   Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

b)   Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

c)   Depriving the Plaintiffs and Class Members of the value of their homes and properties; and

d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes.

73.     As a foreseeable, direct, and proximate result of the forgoing misconduct by the Defendant, the Plaintiffs and the Class have suffered special damages to their properties as alleged herein.

74.     The damages suffered by the Plaintiffs and Class are uniquely injurious to those parties because they suffer harm relating to the use and enjoyment of their lands and properties, and decreased property values, which are not harms suffered by the general public.

75.     The general public is also impacted by the Landfill's odors. Many members of the general public are impacted by the odors when they work, study, commute, shop, or engage in recreation in the Class Area, but they suffer no harm to the use and enjoyment of their land or property, or decreased property values.

76.     The repeated, substantial, and unreasonable interferences with public and private rights has been documented by the Pitcairn community, and citizens have documented the odor issues emanating from the Landfill.

77.     The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's noxious odors, which is ongoing, and which constitutes a nuisance.

78.     By failing to reasonably operate, repair, and/or maintain the Landfill so as to abate nuisances such as noxious odor emissions, the Defendant has acted, and continues to act, intentionally, knowingly, recklessly, and/or negligently, and with conscious disregard for public health, safety, peace, comfort, and convenience.

79.     The Plaintiffs and Class suffered, and continue to suffer, harms and damages that are of a different kind and in addition to those suffered by the public at large.

17

80.     Any social utility that is provided by the Landfill is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

81.     The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class' use and enjoyment of their properties arises from a public nuisance, from which the Plaintiffs and Class Members have uniquely suffered. The Defendant is liable to the Plaintiffs and Class Members for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

## CAUSE OF ACTION III
### NEGLIGENCE

82.     The Plaintiffs restate the allegations of this Complaint as if fully restated herein.

83.     The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to operate and maintain the Landfill in a reasonable manner and to reasonably prevent fugitive emissions of noxious gases and odors from the Landfill.

84.     The Defendant breached its duties by negligently and improperly maintaining and operating the Landfill, which was the direct and proximate cause of the invasion by noxious odors upon the Plaintiffs' and Class' homes, lands, and properties on occasions too numerous to list individually.

85.     Such invasions by noxious odors was the foreseeable result of the foregoing conduct of the Defendant, and the Plaintiffs and Class suffered damages to their properties as alleged herein. Such damages include, but are not limited to, the loss of use and enjoyment of their properties and the diminution of property values.

18

86. By failing to properly maintain and operate the Landfill, the Defendant failed to exercise the duty of ordinary care and diligence.

87. The Defendant knowingly, recklessly, and with a conscious disregard for the rights of the Plaintiffs and Class allowed conditions to exist and perpetuate, which caused noxious odors to physically invade the Plaintiffs' and Class' properties.

88. The Defendant's negligence was committed with a conscious indifference to the harm caused to the Plaintiffs' and Class' properties, which entitles the Plaintiffs and Class to an award for compensatory, injunctive, exemplary, and/or punitive relief.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class by order pursuant to 231 Pa. Code § 1700;

B. Designation of the Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of the Plaintiffs and the Class Members as against the Defendant;

D. An award to the Plaintiffs and the Class Members for compensatory and punitive damages, including pre- and post-judgement interest;

E. An award of attorneys' fees and costs, including pre- and post-judgement interest;

F. An Order holding that the entrance of the aforementioned noxious odors upon the Plaintiffs' and Class' properties constituted a nuisance;

G. An Order holding that the Defendant was negligent in causing noxious odors to repeatedly invade and interfere with the Plaintiffs' and Class' private residential properties;

H. An award to the Plaintiffs and the Class Members for injunctive relief not inconsistent with the Defendant's state and federal regulatory obligations; and

I.   Such further relief, both general and specific, that this Honorable Court deems just and proper.

## JURY DEMAND

The Plaintiffs respectfully demands a trial by jury on all issues raised in this Complaint.

Date: _3-28-24_

Respectfully submitted:

s/ James E. De Pasquale
James E. De Pasquale
Attorney ID: 30223
1302 Grant Building • 310 Grant Street
Pittsburgh, PA  15219
T: (412) 471-1415
E: jim.depasquale@verizon.net

*Attorney for the Plaintiffs*

Steven D. Liddle*
*Pro Hac Vice Applications to be Submitted*
**LIDDLE SHEETS COULSON P.C.**
975 E. Jefferson Avenue
Detroit, MI  48207-3101
T: (313) 392-0015
F: (313) 392-0025
E: sliddle@lsccounsel.com

*Attorneys for Plaintiffs & the Putative Class*

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: *James E. DePasquale*

Signature: *James E. DePasquale*

Name: James E. DePasquale

Attorney No. (if applicable): 30223