**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION**

**FRANK FRANCI and RANDY BUMBAUGH,**
on behalf of themselves and
all others similarly situated,

Plaintiffs,

v.

**CHAMBERS DEVELOPMENT COMPANY, INC.,**

Defendant.

Hon. William S. Stickman
Case No. 2:24-cv-00800

---

**PLAINTIFFS' RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS AND STRIKE**

---

Steven D. Liddle, Esq.*
Laura L. Sheets, Esq.*
Matthew Z. Robb, Esq.*
**LIDDLE SHEETS P.C.**
*Admitted *Pro Hac Vice*
975 E. Jefferson Avenue
Detroit, Michigan 48207
Telephone: (313) 392-0015
Facsimile:  (313) 392-0025
sliddle@lsccounsel.com
lsheets@lsccounsel.com
mrobb@lsccounsel.com

**James E. DePasquale**
1302 Grant Building
310 Grant Street
Pittsburgh, PA 15219
(412) 471-1415
Email: jim.depasquale@verizon.net

*Attorneys for Plaintiffs and the Putative Class*

## INDEX OF EXHIBITS

**Ex. 1** – Franci Data Sheet

**Ex. 2** – Bumbaugh Data Sheet

**Ex. 3** – *Eigenberg* Order Denying MTD and Strike

**Ex. 4** – *Gutierrez* Ord. Denying MTD and Strike

**Ex. 5** – *Sines* Ord. Denying MTD

**Ex. 6** – *Agudelo* Ord. Denying MTD

**Ex. 7** – *Crawford-Johnson* Ord. Denying MTD

**Ex. 8** – *Johnson* Ord. Denying MTD

**Ex. 9** – *Keech* Ord. Denying MTD

**Ex. 10** – *Beck* Ord. Denying MTD

**Ex. 11** – *Lombardozzi* Ord. Denying MTD

**Ex. 12** – *McDavid* Ord. Denying MTD

**Ex. 13** – *Rousselot* Ord. Granting CC

**Ex. 14** – *Aluf* Ord. Granting CC

**Ex. 15** – *Apex* Ord. Granting CC

**Ex. 16** – Clark-Floyd Ord. Granting CC

**Ex. 17** – *Batties* CC Final Judgment

**Ex. 18** – *Ross* CC Final Judgment

**Ex. 19** – *Maroz* CC Final Judgment

## PRELIMINARY STATEMENT

This class action is brought to enforce the well-established private property rights of Plaintiffs, whose homes and properties have been repeatedly invaded by overwhelming noxious odors emitted by the neighboring Monroeville Landfill. Faced with damning allegations, which are well-known to Defendant and area residents, Defendant argues that Plaintiffs' textbook nuisance claims should be dismissed for failure to state a claim upon which relief can be granted. However, Defendant goes even further and seeks to have Plaintiffs' class allegations stricken on the pleadings based on the wholly speculative and unsupportable assertion that common issues cannot predominate in a nuisance odor class action. Nothing could be further from the truth.

Every federal court, with but one exception, has routinely and summarily rejected similar motions to dismiss. The only other federal court that granted a similar motion to dismiss was reversed in its entirety on appeal, through a published opinion by the Third Circuit. *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 227 (3d Cir. 2020). At least a dozen similar motions have been rejected in federal jurisdictions around the country, and include without limitation:

> (**Ex. 3**) *Eigenberg v. USA Waste of California, Inc.*, 5:24-cv-490 (C.D. Cal., July 30, 2024) (**Ex. 4**) Gutierrez v. C&H Sugar, 23-cv-03192 (N.D. Cal., Nov. 15, 2023); (**Ex. 5**) *Sines, et al. v. Darling Ingredients, Inc.*, 2:19-19121-CCC (D. N.J. August, 25, 2020); (**Ex. 6**) *Agudelo v. Sprague Operating Resources, LLC*, 1:20-cv-407-JJM-PAS (D.R.I. March 23, 2021; (**Ex. 7**) *Crawford-Johnson, et. al. v. Graphic Packaging International, LLC*, 1:20-cv-00842 (W.D. Mich. July 7, 2023); (**Ex. 8)** *Johnson et al. v. Big Ox Energy, LLC*, 8:19-cv-00010-JMG-CRZ (D. Neb. Aug. 27, 2019); (**Ex. 9**) *Keech et al. v. Sanimax USA, LLC*, 18-683-JRT/HB (D. Minn. Jan. 2, 2019); (**Ex. 10**) *Beck v. Stony Hollow Landfill, Inc.*, 3:16-cv-455 (S.D. OH May 1, 2017);  (**Ex. 11**) *Lombardozzi et al. v. Taminco US Inc.*, 3:15-cv-00533-MCR-EMT (N.D. Fla. August 24, 2016); (**Ex. 12**) *McDavid et al., v. GAF Building Materials Corporation*, 18-00245-JB-B (S.D. Ala. Feb. 8, 2019).

Notably, the Central District of California very recently rejected many of the same arguments, from the defense same counsel, which Defendant recycles here. (*See* **Ex. 3**, *Eigenberg* Order).

A similar motion to dismiss was recently rejected by this Court. *Childs v. Westmoreland Sanitary Landfill LLC*, No. CV 21-1100, 2022 WL 2073022 (W.D. Pa. June 9, 2022). Yet, Defendant seeks to deny Plaintiff the right to bring a putative class action at the pleading stage, without any benefit of discovery. Defendant argues, contrary to Pennsylvania law and that of the Third Circuit, that odor-related claims are not suitable for class treatment as a matter of law.

Plaintiffs' counsel has recently won many contested motions for class certification in similarly styled odor nuisance class actions, including:

> (**Ex. 13**) *Baranofsky, et al. v. Rousselot Peabody, Inc.*, Case No. 2084CV00896-BLS2 (Mass. Super. Ct., Suffolk Cnty., June 13, 2022) (granting class certification in nuisance odor case against gelatin manufacturer); (**Ex. 14**), *Dudley, et al. v. API Industries d/b/a Aluf Plastics*, Case No. 030905/2018 (NY, Rockland Cnty. Supr. Ct., Jan. 3, 2022) (granting class certification against plastic bag manufacturer); (**Ex. 15**) *Sutton v. Apex Environmental, LLC*, Case No. 20-CV-116 (Ohio, Jeff. Ct. Comm. Pleas Sep. 23, 2022) (granting class certification against landfill operator); *Olden v. Lafarge Corp.*, 383 F.3d 495 (6th Cir. 2004) (affirming class certification against cement manufacturer); (**Ex. 16**), *Gonzales v. Clark-Floyd Landfill, LLC*, Case No. 10C02-1608-CT-000131 (Ind. Clark Cnty. Cir. Ct., Oct. 18, 2019) (granting class certification against landfill); *Clark-Floyd Landfill, LLC v. Gonzalez*, 150 N.E.3d 238, 248 (Ind. Ct. App. 2020) (affirming).

Indeed, many dozens of additional cases like this have been certified as class actions for settlement purposes, including in Pennsylvania. (**Ex. 17**) *Batties, et al. v. Waste Management of Pennsylvania, Inc.*, 2-14-cv-7013 (E.D. Pa., May 11, 2016); (**Ex. 18**) *Ross, et al. v. USC Co.*, No. G.D. 17-8663 (Allegheny Cnty. C.O.C.P, Feb. 24, 2020); (**Ex. 19**) *Maroz, et al. v. Arcelormittal Monessen LLC*, No. 15-cv-770 (W.D. Pa., Nov. 14, 2016). For the following reasons, Plaintiffs respectfully request that Defendant's motion be denied.

## FACTUAL BACKGROUND

Plaintiffs bring this proposed class action against the owner-operator of the Monroeville Landfill because of widespread noxious odors that Defendant has repeatedly released off-site into their private residential properties, and many other similarly situated properties, surrounding the

Landfill in eastern Allegheny County. (Doc. 1-3, ¶1-2). Plaintiffs bring claims for Private Nuisance

(Count I), Public Nuisance (Count II), and Negligence (Count III). (Doc. 1-3, ¶56-88).

**I.    Overview of Factual Allegations in Support of Plaintiffs' Claims.**

Defendant Chambers Development Company, Inc. ("Defendant" or "Chambers") owns and

operates a solid waste landfill located at 600 Thomas Street, in Monroeville, Pennsylvania

("Landfill"). (Doc. 1-3, ¶5). The Landfill accepts, processes, and stores substantial quantities of

waste materials including, but not limited to: biosolids, municipal solid waste, construction and

demolition debris, auto shredder fluff, and sandblast media. (Doc. 1-3, ¶15). The Landfill is

surrounded by residential properties. (Doc. 1-3, ¶10).

The materials deposited into the Landfill decompose and generate byproducts, including

leachate and landfill gas, which generally consists of hydrogen sulfide, methane, carbon dioxide,

and other various compounds. These byproducts can be particularly odorous and offensive when

not managed properly, giving off a characteristic "rotten egg" smell. (Doc. 1-3, ¶16).  Importantly,

however, landfills do not inherently cause noxious off-site odors. Rather, a properly designed,

operated, and maintained landfill will adequately capture, process, and remove leachate and

landfill gas to prevent odors from escaping into the ambient air. (Doc. 1-3, ¶17).

Unfortunately, Chambers has failed to use adequate odor mitigation processes, and

technologies, to control noxious odor emissions from the Landfill and prevent those odors from

invading the homes and properties of the Plaintiffs and putative Class. (Doc. 1-3, ¶26). These

failures include, without limitation: (a) Failing to install, maintain, and operate an adequate landfill

gas collection system; (b) Insufficient monitoring of the Landfill; (c) Utilizing inadequate cover

and covering practices; (d) Failing to purchase, possess, and maintain appropriate equipment; (e)

Improper and/or excessive processing of construction and demolition waste; (f) Engaging in

excavation without adequate erosion or sedimentation controls; and (g) Failing to use other odor mitigation and control techniques that are reasonably available. (Doc. 1-3, ¶27). As a result, Plaintiffs' property including Plaintiffs' neighborhoods, residences and yards have been and continue to be physically invaded by noxious odors. (Doc. 1-3, ¶12).

The Landfill and its noxious emissions have been the subject of frequent complaints by citizens in the nearby residential area. (Doc. 1-3, ¶28). Dozens of households within the proposed Class Area have contacted Plaintiffs' Counsel to report noxious odors originating from the Landfill at their homes.[1] (Doc. 1-3, ¶30). Plaintiff Frank Franci reported that the landfill odor is so severe that it causes him "a lack of sleep because of being woke up from the odor." (Doc. 1-3, ¶30; **Ex. 1**). The odor also is so severe that it causes Mr. Franci temporary physical discomfort. (**Ex. 1**). Similarly, Plaintiff Randy Bumbaugh reported that the "odor is so bad it makes the inside of your house smell … It gets so bad at times you can't even be outside." (Doc. 1-3, ¶31; **Ex. 2**).

Plaintiffs' reports of noxious odors from the Landfill are overwhelmingly similar to the odor experiences documented by dozens of other putative class members. A very small sample of the factual allegations made by putative class members to Plaintiffs' counsel include the following:

- **<u>Mary and Terrence Gisi</u>**: "the odor is so strong some days that the doors closed, and windows don't stop if from coming in. We can't sit outside when it's warm out or open windows and doors. It's a putrid smell that's nauseating."

- **<u>Donna Capo-Gibson</u>**: "the odor is terrible. It makes me gag. It stops me from going outside of my house and doing things outside. It stops me from opening windows because the smell is so bad it definitely affects me enjoying my home."

- **<u>Jermaine and Jennifer Bracy</u>**: The odors are "disgusting, toxic, and nauseating. Sometimes, it's so strong we can't even open our windows or go outside … [and] we regret that we bought this house because of it … it definitely affects our quality of life."

---

[1] While outside the pleadings, 85 putative class members to date have submitted reports to Plaintiffs' Counsel documenting odor experiences in their home and/or community.

Further, numerous residents have filed complaints with the Pennsylvania Department of Environmental Protection ("PA DEP"). A small sample of the many odor complaints include:

- On October 21, 2023, PA DEP addressed a complaint, stating "on October the 20th, we had a complaint. Our fire department was out. It was methane gas. This has been recurring. The landfill surrounds one side of our town and it's a big concern to us."

- On December 15, 2023, a caller reported, "I am right now smelling gas from what I believe is the dump. We were told by the politicians in the town to give the DEP a complaint…I did call 911 as well to make sure that it wasn't any kind of gas smell."

- On December 17, 2023, PDEP received three odor-related complaints, including one complainant stating the smell was, "overwhelmingly strong. The firemen are out there again. They've been out there a lot and it's making people nauseous. It's really overpowering." (Doc. 1-3, ¶34(b)(i) – (iii)).

The Pitcairn Fire Department has been called numerous times due to repeated gas-like odors emitted by the Defendant into the surrounding community. (Doc. 1-3, ¶34(a)). As just one example, of which there are many, in December 2023, Pitcairn's Emergency Management Coordinator, Nick Turner, stated that in response to calls from residents, his crews metered the surrounding area of the Landfill and found "explosive and toxic" readings. The readings increased in severity the closer the Fire Department got to the Landfill. (Doc. 1-3, ¶34(a)(i)).

The noxious odors from Defendant's Landfill are offensive to the Plaintiffs and putative Class Members and would be offensive to reasonable people of ordinary health and sensibilities. (Doc. 1-3, ¶36). Plaintiffs allege that they, and similarly situated neighbors, have been injured by the actual physical invasion of Defendant's odors into nearby private residential properties, resulting in injuries and damages that include substantial interferences with the use and enjoyment of private property and adverse impacts on the value of private property. (Doc. 1-3, ¶37-38).

## II.    Overview of Class Allegations.

Plaintiffs bring this action individually and on behalf of all persons that the Court may determine to be appropriate for class certification. Plaintiffs seek to represent a class of similarly

situated persons preliminarily defied as: "***All owners/occupants and renters of residential property within one (1) mile radius of the Monroeville Landfill Management Facility between the date two (2) years predating the filing of this Complaint.***"[2] [3] (Doc. 1-3, ¶44).  Plaintiffs allege that numerous common questions of law and fact predominate over any individual questions affecting class members. (Doc. 1-3, ¶48(a) – (f)) (listing preliminarily common questions).

## LEGAL STANDARD

### Motion to Dismiss

In reviewing the motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

### Motion to Strike

"Numerous courts have held that motions to strike class allegations from a pleading are disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety." *Austin v. Invention Submission Corp.*, No. CV 19-1396, 2020 WL 2771076, at *10 (W.D. Pa. Apr. 13, 2020) "District courts within the Third Circuit typically conclude that

---

[2] The proposed definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class. Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such sub-classes are appropriate. (Doc. 1-3, ¶44).

[3] Plaintiffs object to Defendant's attempt to mischaracterize Plaintiffs' proposed class with irrelevant data that is outside the pleadings including: (1) the average household size within the preliminary class area; (2) the date when the Landfill began operations; (3) references to Defendant's permit and purported compliance status; and (4) the dates when Plaintiffs' homes were built and occupied by Plaintiffs. Defendant purportedly uses this data to suggest that the Landfill has been operated properly, which Plaintiffs' dispute. Further, Defendant appears to use this data to advance certain defenses, which are not argued or raised through this Motion. This apparently superfluous information merely reinforces the need for discovery prior to summary adjudication.

motions to strike class action allegations filed before plaintiffs move for class certification are premature." *Doiron v. Cenergy Int'l Servs., LLC*, No. 2:17-CV-01203, 2018 WL 928238, at *2 (W.D. Pa. Feb. 15, 2018). "[T]he better course is to deny such motion because the shape and form of a class action evolves only through the process of discovery." *Id.*

That is "[b]ecause discovery is essential to determining whether a case can be maintained as a class action[.]" *Austin v. Invention Submission Corp.*, No. CV 19-1396, 2020 WL 2771076, at *10 (W.D. Pa. Apr. 13, 2020). "[A]n early, uninformed evaluation of class certification in conjunction with a motion to dismiss [does] not comport with the 'rigorous analysis' required to resolve every class certification question[.]" *P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia*, No. 2:11-CV-04027, 2011 WL 5127850, at *4–5 (E.D. Pa. Oct. 31, 2011) (citing *Landsman*, *supra*). Generally, "the class action process should be able to 'play out' according to the directives of Rule 23 and should permit due deliberation by the parties and the court on the class certification issues." *Id.* (quoting *Landsman*). Accordingly, "[a]llowing time for limited discovery supporting certification motions may ... be necessary for sound judicial administration." *Id.*

The Third Circuit has determined that there are only a "rare few [cases] **where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.**" *Landsman*, 640 F.3d at 93 n.30 (emphasis added). "Class allegations may be stricken only when no amount of discovery will demonstrate that the class can be maintained." *Bell v. Cheswick Generating Station*, L.P., No. CIV.A. 12-929, 2015 WL 401443, at *2 (W.D. Pa. Jan. 28, 2015).

## ARGUMENT

I.   **Plaintiffs' Claims for Private Nuisance, Public Nuisance, and Negligence are Well Pled.**

Defendant's Motion to Dismiss throws the whole pot of spaghetti against the wall to see if anything sticks. Nothing sticks here, as demonstrated by the many cases cited above where federal courts have denied such motions based on similar complaints. (**Exs.** 3-12).

Defendant's assertion that complaints like this have been dismissed by other courts is patently misleading. Every federal court, with but one exception, has ultimately rejected similar motions to dismiss with prejudice. The only other federal court that granted a similar motion to dismiss with prejudice was reversed in its entirety on appeal by the Third Circuit. *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 227 (3d Cir. 2020). In *Baptiste*, the Third Circuit held that a highly similar complaint adequately alleged private nuisance, public nuisance, and negligence claims based on allegations of noxious odor emissions from a landfill under Pennsylvania law. *Baptiste* is authoritative, published law, and it must be followed here. Further, *Baptiste* wholly undermines Defendant's argument that Plaintiffs' claims are not cognizable in the Commonwealth.

While it is true that there have been very few occasions (over the course of more than 25 years of practice) where similar motions by Plaintiffs' Counsel have been granted with leave to amend, Defendant's citations reveal its Motion's lack of merit and context. For example, Defendant cites *Maroz* to suggest that motions like this are frequently granted. They are not. In fact, the *Maroz* court itself held that "Plaintiffs … have asserted a valid claim for private nuisance, based solely upon their allegations claiming they have lost the use and enjoyment of their land and have borne decreased property values." *Maroz v. Arcelormittal Monessen LLC*, No. 15CV0770, 2015 WL 6070172, at *4 (W.D. Pa. Oct. 15, 2015). Though the public nuisance count was dismissed for lack of specificity regarding "what the harm the public at large has suffered"

Plaintiffs opted not to seek amendment or appeal.[4] Ultimately, *Maroz* was certified as a class action for settlement purposes following discovery, and Plaintiffs' Counsel obtained more than $1 million in monetary and injunctive relief for the affected community. (**Ex. 19**, *Maroz* Final Order).

Defendant neglects to inform the Court that *Ford* was dismissed without prejudice. Ultimately, Plaintiffs' Counsel opted to file a new case, and the case proceeded through class certification discovery, with no motion to dismiss even filed by the defendant in the second case, prior to a settlement being reached.[5] Defendant fails to establish that any similar federal complaints have been dismissed with prejudice in the past, and Plaintiffs have offered voluminous opinions and authorities that Defendant's motion is meritless.

### A.    Private Nuisance

Defendant blatantly mischaracterizes Plaintiffs' allegations of severe and widespread noxious odors invading their homes as merely a "slight inconvenience or petty annoyance" and recasts numerous well-pled factual allegations as merely "threadbare" recitals of an entitlement to relief. Clearly, Defendant wishes to be excused from the well-established principle that courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233. Plaintiffs trust that the Court will not accept Defendant's invitation to ignore the pleading standard here.

Pennsylvania Courts have long awarded damages to private nuisance claimants for the loss of use and enjoyment of property, in addition to market value losses, resulting from noxious odor

---

[4] As discussed below, Plaintiffs' allegations here identify the nature of the public right impacted, the nature of the public harm, and how Plaintiffs' damages are different in kind from the community at-large, which would have satisfied the *Maroz* court if it had been necessary.

[5] *Ford v. Chillicothe*, 2:16-cv-278 (S.D. Ohio).

invasions. *See Evans v. Moffat*, 192 Pa. Super. 204, 221, 160 A.2d 465, 473 (1960) (awarding $5,700 total damages, in addition to the market value loss, for annoyance and discomfort from "noxious and foul-smelling gases from refuse dumps").

Defendant first argues that Plaintiffs have not adequately alleged "significant harm." However, under Pennsylvania Law, "[w]hat constitutes a nuisance is usually a question of fact to be determined by the jury." *Kiser v. Kerbaugh, Inc.*, 40 Pa. Super. 163, 170 (1909). Pennsylvania Courts have long held that "whether it was a nuisance at all depended on the proof; whether plaintiffs' evidence established the fact could not be determined by the court[.]" *Siwak v. Borough of Rankin*, 72 Pa. Super. 218, 220 (1919).

Plaintiffs' allegations that the Landfill's odors are so severe that Mr. Franci is "continuously woken up" in the middle of the night and that Mr. Bumbaugh's allegation that "odor is so bad it makes the inside of your house smell" allege far more than a trite inconvenience. (Doc. 1-3, ¶31-32). Both Plaintiffs allege experiencing temporary physical discomfort because of the odors. (**Ex. 1**; **Ex. 2**). So do the allegations from putative class members regarding Defendant's "nauseating" and "putrid" odors that force Defendant's neighbors to close their windows and doors and forego the use the outdoor spaces of their properties. (Doc. 1-3, ¶33). Further, local residents reported to the PA DEP that the odors from the landfill are "overwhelmingly strong. The firemen are out there again. They've been out there a lot and it's making people nauseous. It's really overpowering." (Doc. 1-3, ¶34 (b)). This is more than adequate to allege "significant harm" for pleading purposes.[6]

Second, Defendant argues that Plaintiffs have failed to allege that it acted in an "intentional and unreasonable" or "negligent" manner. However, Plaintiffs specifically allege that Defendant

---

[6] To the extent the Court disagrees, the pleadings could easily be amended and would not be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1435 (3d Cir. 1997).

"has failed to use adequate odor mitigation strategies, processes, technologies, and equipment to control noxious odor emissions from the Landfill[.]" (Doc. 1-3, ¶26). Plaintiffs also specifically allege that, among others, Defendant has failed "to install, maintain, and operate an adequate landfill gas collection system[.]" (Doc. 1-3, ¶27). This is corroborated by testimony from independent third parties at the Borough of Pitcairn's emergency management crew. (¶34(a)-(b)).

It is well-established that "[i]f the defendant's plant is emitting more of these annoying things than other plants in the same business and of equal output are emitting, there is something wrong with the equipment and management of the defendant's plant and the smoke, odors, gases, smudge, and noises are unnecessary and unreasonable." *Hannum v. Gruber*, 346 Pa. 417, 424, 31 A.2d 99, 102–03 (1943). Defendant's unreasonable and/or negligent conduct is properly alleged.

To rise to the level of intentional conduct, "one need not intend to harm another party in order to be liable for an intentional private nuisance; the nuisance-causing party need only know, or be substantially certain, that its actions will significantly interfere with the other party's use and enjoyment of her land." *Tiongco v. Sw. Energy Prod. Co.*, 214 F. Supp. 3d 279, 291 (M.D. Pa. 2016) (citing Restatement (Second) of Torts § 825, Illus. 2). Plaintiffs allege that "Defendant knew about its substantial noxious odor emissions through numerous complaints, warnings, and significant media attention throughout the Borough of Pitcairn." (Doc. 1-3, ¶41). This is corroborated by the many public complaints about Defendant's emissions impacting local homes. Yet, Defendant continued to intentionally operate the Landfill, with knowledge of the impacts.

Finally, Defendant makes the absurd argument that Plaintiffs Franci and Bumbaugh have failed to allege any interference connected with their property interests. Does Defendant genuinely intend to defend this case by proving that Mr. Franci has been continuously awoken from his sleep due to odors at a place other than his residence? Or that Mr. Bumbaugh's assertion that the "odor

is so bad it makes the inside of your house smell" occurred somewhere other than his own house? Such assertions entirely defy credibility, particularly at the pleading stage. Both Plaintiffs clearly allege odor experiences specifically impacting their private property interests.

### B.    Public Nuisance

Defendant argues for dismissal of Plaintiffs' public nuisance count because there is no allegation of interference with a public right. This is untrue. Plaintiffs allege that "Defendant's noxious odors have interfered with the public's right to unpolluted and uncontaminated air." (Doc. 1-3, ¶70). It cannot be seriously argued that the Defendant has not interfered with a right common to the general public. One need look no further than to Pennsylvania's constitution to determine that in the Commonwealth, "*[t]he people have a right to clean air.*" Pa. Const. Art. I, § 27 (*see also Fisher v. Am. Reduction Co.*, 189 Pa. 419, 429, 42 A. 36, 39 (1899) ("The plaintiffs had a right to pure untainted, uncontaminated, inoffensive air, at least as pure as it may be consistent with the compact nature of the community in which they lived.")). A valid public right is alleged here.

Plaintiffs have plausibly alleged an interference with public rights. In addition to the allegation in Paragraph 75 that "[m]any members of the general public are impacted by the odors when they work, study, commute, shop, or engage in recreation in the Class Area[,]" Plaintiffs also plead that "the Pitcairn Fire Department has been called numerous times due to repeated gas-like odors emitted by the Defendant into the surrounding community." (Doc. 1-3, ¶34(a)). In addition to the testimony from four putative class members, these factual allegations are more than sufficient to plausibly allege an interference with workers' public right to breathe uncontaminated air while doing their jobs in public spaces.

"When a private or public nuisance is so widespread that it affects both public and private rights, it may be actionable as either public or private or both public and private." *Baptiste*, 965

F.3d at 223. Plaintiffs have adequately alleged widespread odors from the Landfill impacting both public and private rights. The authoritative *Baptiste* decision squarely defeats Defendant's argument for dismissal of Plaintiffs' public nuisance count, which is well-pled.

### C.    Negligence

Defendant next claims that Plaintiffs must allege "physical damage" to their properties to sustain a negligence count based on the actual invasion of noxious odors into their homes. However, the actual physical invasion of airborne contamination plainly constitutes a cognizable "physical injury" under well-established Pennsylvania negligence law.

"The law in this Commonwealth has long recognized that where injury is sustained to real property ***as a result of the negligence of another***, the property owner is entitled to damages for the inconvenience and discomfort caused thereby." *Dalton v. McCourt Elec., LLC*, 2013 U.S. Dist. LEXIS 37293, *5-6, 2013 WL 1124397 (E.D. Pa. March 19, 2013) (citing *Dussell v. Kaufman Construction Co.*, 398 Pa. 369, 378, 157 A.2d 740, 745 (1960); *Evans v. Moffat*, 192 Pa. Super. 204, 221, 160 A.2d 465, 473 (1960); *See also Moore v. Mobil Oil Co.*, 331 Pa. Super. 241, 257, 480 A.2d 1012, 1020 (1984); and, *accord*, Restatement (Second) of Torts § 929(c)).

In Pennsylvania, "the physical presence of [chemicals] in the air, even if undetectable, constitutes a physical injury to the property for purposes of common law property damage claims." *Gates v. Rohm & Haas Co.*, No. CIV.A. 06-1743, 2008 WL 2977867, at *3 (E.D. Pa. July 31, 2008). This is true whether there is a physical invasion of air contaminants or "an invasion ***by something otherwise perceptible to the senses***, but not necessarily physical, like noise or vibrations." *Gates*, 2008 WL 2977867 at *3 (emphasis added). And "the exposure level need not necessarily present a health risk to make out a property damage claim." *Id*. All that is required to

bring a claim based on noxious airborne contaminants is that the emission "was and continues to be physically present on their properties." *Id.*

Here, Plaintiffs allege that Defendant's landfill emits "hydrogen sulfide, methane, carbon dioxide[.]" (Doc. 1-3, ¶16). Plaintiffs allege that their properties, "including Plaintiffs' neighborhoods, residences and yards ***have been and continue to be physically invaded*** by noxious odors, pollutants, and air contaminants" from the Landfill. (Doc. 1-3, ¶12) (emphasis added). These emissions "are offensive to the Plaintiffs and putative Class Members and would be offensive to reasonable people of ordinary health and sensibilities." (Doc. 1-3, ¶36). Under *Gates*, this is sufficient to allege a physical injury to sustain a negligence claim under Pennsylvania law.

Defendant relies on *Menkes*, an unpublished, non-precedential opinion to claim that physical injury to property is required to sustain a negligence claim. That case did not hold that loss of property value and interference with use and enjoyment are unrecoverable forms of property damage in a negligence claim.[7] Rather, *Menkes* involved a dismissal *without* prejudice because the plaintiffs "failed to allege that their property [was presently] affected by the contaminated groundwater or contaminated public water supply." *Menkes v. 3M Co.*, No. CV 17-0573, 2018 WL 2298620, at *7 (E.D. Pa. May 21, 2018). *Menkes* relied on *Gates* to determine that a plaintiff must allege that the contaminant "was and continues to be physically present on their properties[,]" which the plaintiffs there failed to do. *Id.* Here, Plaintiffs have made that allegation.

Thus, *Menkes* is meaningfully distinct. Further, the underlying case to which *Menkes* relied, *In re Paoli*, confirms that physical destruction of property is not required. *In re Paoli R.R. Yard*

---

[7] The quote upon which Defendant relies cites *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 798 (3d Cir. 1994), which allowed for recovery of loss of value damages based on "stigma" alone, meaning that actual contamination was not a required proof. *In re Paoli* supports that Plaintiffs' alleged damages, which arise from an actual, perceptible invasion, are recoverable here.

*PCB Litig.*, 35 F.3d 717, 798 (3d Cir. 1994) ("plaintiffs can make out a claim for diminution of value of their property without showing permanent physical damage to the land.").

Defendant's only other citation is *Lloyd*, which has been rejected as unpersuasive by this Court in *Childs*, a similar case involving landfill odors. *Childs v. Westmoreland Sanitary Landfill LLC*, No. CV 21-1100, 2022 WL 2073022, at *1 (W.D. Pa. June 9, 2022). Addressing an identical argument, this Court held that "Defendant has not demonstrated entitlement to dismissal of Plaintiffs' negligence claim. The Court respectfully declines to adopt the reasoning in *Lloyd*, which, in the undersigned's view, reads too much into the Court of Appeals for the Third Circuit's footnote in *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 229 n.12 (3d Cir. 2020)." *Id.*

## II.    Plaintiffs Do Not Allege Purely Economic Losses, and Their Damages Stem from an Actual Invasion of Private Property by Noxious Odors.

Defendant separately argues for dismissal of Plaintiffs' private nuisance and negligence claims based on the economic loss doctrine. The economic loss rule states that "[t]he general rule of law is that economic losses may not be recovered in tort (negligence) absent physical injury **_or_** property damage." *Spivack v. Berks Ridge Corp.*, 402 Pa. Super. 73, 78, 586 A.2d 402, 405 (Pa. Super. Ct. 1990) (emphasis added).  "Economic loss has been defined as damage for inadequate value, costs of repair and replacement **_of defective product_**, and consequential loss of property, without any claim of personal injury **_or_** damage to other property.'" *Diehl v. CSX Transportation, Inc.*, 349 F. Supp. 3d 487, 506 (W.D. Pa. 2018) (citations and marks omitted). The economic loss rule is thus generally limited to products liability cases to prohibit "'plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir.1995). Thus, "[t]he economic loss doctrine …. only covers situations in which a party in privity of contract with another suffers an injury to a product itself,

resulting in purely economic loss." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 620 (3d Cir. 1995). Plaintiffs are not in privity of contract with Defendant. The economic loss rule should not apply to bar Plaintiffs' claims, as the claims here do not conflate torts and contract.

Nor do Plaintiffs seek purely economic losses. Plaintiffs allege property damages, in the form of lost use and enjoyment of property, adverse impacts on property values, and injunctive relief, as a result of the actual physical invasion of their properties by noxious odors. "The law in this Commonwealth has long recognized that where injury is sustained to real property *as a result of the negligence of another*, the property owner is entitled to damages for the inconvenience and discomfort caused thereby." *Dalton*, 2013 U.S. Dist. LEXIS 37293, *5-6, 2013 WL 1124397 (E.D. Pa. March 19, 2013) (citations listed above). Loss of use and enjoyment is not an economic loss. Nor is injunctive relief.

The Third Circuit and this Court have already rejected application of the economic loss rule to claims like this. In *Baptiste*, the Third Circuit has held that plaintiffs seeking recovery as a result of the invasion of noxious odors "are not seeking economic losses, only real property damages, i.e., loss of real property value and interference with the use and enjoyment of their homes and private land." *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d at 222. In *Diehl*, this Court held that where the plaintiff alleges loss of use and enjoyment of property, "Plaintiff's alleged injuries do not clearly fall within the definition of 'economic loss'" *Diehl v. CSX Transportation, Inc.*, 349 F. Supp. 3d 487, 507 (W.D. Pa. 2018). Thus, published holdings of this Court and the Third Circuit squarely reject Defendant's attempt to extend the economic loss rule beyond its reasonable bounds.

Defendant unpersuasively relies on *One Meridian Plaza*. While the Court did dismiss certain claims alleging loss of use and access to property due to a massive fire and subsequent

evacuation that did not directly reach their properties, the Court held that "[i]f the alleged 'physical invasion' of smoke, water, odor, debris or toxins caused the economic loss, they are sufficient to be 'physical harm'" from which economic losses are recoverable. *In re One Meridian Plaza Fire Litig.*, 820 F. Supp. 1460, 1487 (E.D. Pa.). Here, Plaintiffs allege exactly that type of invasion by noxious odors from Defendant's Landfill. Thus, Plaintiffs have alleged a predicate physical injury[8] to property, from which economic losses may be recovered.

## III. Defendant's Conduct Was Taken with Reckless Disregard for the Known Consequences of Its Actions, and Plaintiffs' Request for Punitive Damages Should Not Be Prematurely Dismissed through a 12(b)(6) Motion.

Punitive damages are only "an element of damages" and not an independent cause of action. *See Shanks v. Alderson*, 399 Pa. Super. 485, 489, 582 A.2d 883, 885 (Pa. Super. Ct. 1990). Thus, Defendant's Motion is not properly brought under Rule 12(b)(6) and instead can only be considered in the context of a Motion to Strike under Rule 12(f).

It is premature to strike the pleadings. *See Artman v. Kochka*, 2012 Pa. Dist. & Cnty. Dec. LEXIS 268, *6 (Ct. Common Pleas, Westmoreland Cty. June 21, 2012) (stating that "striking the claim for punitive damages at this time would be inappropriate and untimely."); *see Diehl*, 349 F. Supp. 3d at 510 ("because Plaintiff has plausibly alleged knowing and outrageous conduct on the part of Defendant that caused the derailment and subsequent evacuation, the Court will not dismiss Plaintiff's punitive damages request at this juncture."). The Court should reserve any decision on entitlement to punitive damages until the summary judgment stage, based on a complete record.

## IV. The Face of the Complaint Adequately Alleges Each Element Required to Certify a Class under Fed. R. Civ. P. 23(a) and (b)(3).

---

[8] The *One Meridian* court noted that "'physical harm' suggests some physical contact or damage[,]" which is alleged here. *In re One Meridian Plaza Fire Litig.*, 820 F. Supp. at 1487.

Defendant asks the Court to prematurely strike Plaintiffs' class allegations based solely on one element of Fed. R. Civ. P. 23, whether common issues will predominate. *See* Fed. R. Civ. P. 23(b)(3). All motions to strike class allegations are "disfavored" and granted in a "rare few [cases] **where <u>the complaint itself</u> demonstrates that the requirements for maintaining a class action cannot be met.**" *Landsman*, 640 F.3d at 93 n.30 (emphasis added). However, striking class allegations based on predominance is even more suspect. "***Particularly when a court considers predominance***, it may have to venture into the territory of a claim's merits and evaluate the nature of the evidence." *Id.* at 93 (emphasis added). "In most cases, some level of discovery is essential to such an evaluation." *Id*. Plaintiffs can prove that common issues predominate here.

Indeed, courts across the country have repeatedly determined as much. "Common issues predominate in air pollution cases when the paramount issue concerns whether a plant's emissions are substantially interfering with the local residents' use and enjoyment of their real and personal property." *Stanley v. U.S. Steel Co.*, No. 04-74654, 2006 WL 724569, at *7 (E.D. Mich. Mar. 17, 2006). "A number of outcomes are possible when a court is faced with the prospect of certifying (or decertifying) a class under Rule 23(b)(3) in a pollution case, in which many people claim to have been similarly harmed by the actions of a defendant and common questions exist." *Ponca Tribe of Indians of Oklahoma v. Cont'l Carbon Co.*, No. CIV-05-445-C, 2008 WL 11338389, at *6 (W.D. Okla. July 1, 2008) (listing air pollution cases where common issues predominate); *see also Bell-Alanis v. J. H. Baxter & Co.*, No. 6:21-CV-00885-MK, 2023 WL 2717223, at *4 (D. Or. Mar. 14, 2023) (granting class certification in nuisance odor class action).

Defendant's Motion is particularly unpersuasive given that two courts have recently rejected virtually identical motions to strike class allegations, including one filed by Defendant's Counsel. In *Gutierrez*, the Northern District of California held that:

> The class allegations do not contain "redundant, immaterial, impertinent, or scandalous matter." See Fed. R. Civ. P. 12(f). Nor has defendant proven that there is no possibility that a class action can be maintained on the facts alleged or that certifying a class would be improper as a matter of law. The factual record is completely undeveloped at this point, such that defendant's various issues, such a predominance, ascertainability and overbreadth, cannot properly be evaluated.

(**Ex. 4**, *Gutierrez* Ord. Denying MTD and Strike). More recently, in *Eigenberg*, the Central District of California rejected a virtually identical motion from Defendant's Counsel here, holding:

> The Court fails to see how a motion to strike is an appropriate vehicle to address any class certification issues and Defendant fails to cite any caselaw to support that proposition. We therefore decline to strike Plaintiff's class allegations.

(**Ex. 3**, *Eigenberg* Ord. Denying MTD and Strike). The same result is warranted here.

Plaintiffs' complaint identifies numerous common issues, the determination of which will predominate in the resolution of Defendant's liability. (Doc. 1-3, ¶48(a)-(h)). Whether and how Defendant emitted off-site nuisance odors is a common question of law and fact. (¶48(a)). So is the geographic extent to which those emissions spewed into the surrounding residential community. (¶48(e)). Whether Defendant acted negligently or unreasonably in emitting off-site odors is a common question of law and fact. (¶48(a)). Whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference with the use and enjoyment of properties is also a common question. (Doc. 1, ¶48(g)). Importantly, the nuisance standard in Pennsylvania is objective: "If normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable, then the invasion is significant." *Kembel v. Schlegel*, 329 Pa. Super. 159, 167, 478 A.2d 11, 15 (1984) (citing Restatement (Second) of Torts, § 822F, cmt. c.). Thus, the primary issues that will be in dispute through this litigation will involve overwhelmingly common facts relating to Defendant's liability. Further, whether the impacts rise to the level of a nuisance will be adjudicated based on an objective standard, meaning that individual perceptions of odors will be irrelevant.

The face of Plaintiffs' complaint does not "demonstrate that the requirements for maintaining a class action cannot be met." *Landsman*, 640 F.3d at 93 n.30. To the contrary, Defendant wholly neglects to inform the Court that Plaintiff's Counsel has won class certification in multiple, virtually identically pled nuisance odor class actions over the past several years alone. (*See*, *e.g.*, Pg. 2 of this brief). In light of these many contested class certification victories in similarly styled nuisance odor class actions, it is absurd to suggest that class certification cannot be appropriate under any circumstances. Accordingly, the Court should consider the merits of class certification, and predominance, based on a complete record, as intended by Rule 23.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion in its entirety.

Respectfully Submitted,

*/s/ Matthew Z. Robb*
Steven D. Liddle, Esq.*
Laura L. Sheets, Esq.*
Matthew Z. Robb, Esq.*
**LIDDLE SHEETS P.C.**
*Admitted *Pro Hac Vice*
975 E. Jefferson Avenue
Detroit, Michigan 48207
Telephone: (313) 392-0015
Facsimile:  (313) 392-0025
sliddle@lsccounsel.com
lsheets@lsccounsel.com
mrobb@lsccounsel.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record for Defendant.

*/s/ Matthew Z. Robb*
Matthew Z. Robb, Esq.

*Attorney for Plaintiffs*