IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

FRANK FRANCI and RANDY
BUMBAUGH, *on behalf of themselves and
all others similarly situated,*

               *Plaintiffs,*

    v.

CHAMBERS DEVELOPMENT
COMPANY, INC.,

               *Defendant.*

Civil Action No. 2:24-cv-800

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

       Plaintiffs, Frank Franci ("Franci") and Randy Bumbaugh ("Bumbaugh") (collectively "Plaintiffs"), on behalf of themselves and others similarly situated ("Class Members"), brought this action against Defendant Chambers Development Company, Inc. ("Chambers") in the Court of Common Pleas of Allegheny County, Pennsylvania. (ECF No. 1-3). Chambers removed the action to this Court. (*Id.*). Plaintiffs allege at Count I that Chambers intentionally, knowingly, recklessly, and/or negligently created a private nuisance that substantially and unreasonably interfered with Plaintiffs' property. (*Id.* ¶¶ 56-65). At Count II, Plaintiffs allege that Chambers' substantial and unreasonable interference with Plaintiffs' use and enjoyment of their property "arises from a public nuisance, from which the Plaintiffs have uniquely suffered." (*Id.* ¶¶ 66-81). At Count III, Plaintiffs allege that Chambers negligently allowed conditions to exist which caused noxious odors to physically invade Plaintiffs' properties. (*Id.* ¶¶ 82-88). Chambers filed a motion to dismiss (ECF No. 5) and supporting brief (ECF No. 6) arguing that Plaintiffs' complaint must

1

be dismissed for failure to state a claim upon which relief may be granted. (ECF No. 5, p. 1). In the alternative, Chambers moves to dismiss Plaintiffs' claims for punitive damages and strike Plaintiffs' class allegations. (*Id.*). Plaintiffs filed a brief opposing Chambers' motion to dismiss and strike. (ECF No. 19). Chambers filed a reply brief, (ECF No. 20), and notice of supplemental authority, (ECF No. 21). For the reasons set forth below, the Court will deny Chambers' motion in all respects.

## I.    FACTUAL BACKGROUND

Chambers is a Delaware corporation which owns and operates a solid waste landfill ("Landfill") located at 600 Thomas Street, Monroeville, Pennsylvania. (ECF No. 1-3, ¶ 5). Plaintiffs are individuals who own and reside on property in Monroeville, Pennsylvania. (*Id.* ¶ 3-4). They brought this action individually and on behalf of "[a]ll owners/occupants and renters of residential property within one (1) mile of the Landfill property boundary." (*Id.* ¶ 44). There are around 2,700 residences within the class area. (*Id.* ¶ 46). Chambers is a Delaware corporation which owns and operates the Landfill. (*Id.* ¶ 5).

The Landfill accepts, processes, and stores substantial quantities of waste materials including, but not limited to: biosolids, municipal solid waste, construction and demolition debris, auto shredder fluff, and sandblast media. (*Id.* ¶ 15). Plaintiffs allege that the materials deposited into the Landfill decompose and generate byproducts, including leachate and landfill gas. (*Id.* ¶ 16). These byproducts can be particularly odorous and offensive when not managed properly, giving off a "rotten egg" smell. (*Id.*). Plaintiffs contend that landfills do not inherently emit noxious odors perceptible in the surrounding community. (*Id.* ¶ 17). Rather, "[a] properly designed, operated, and maintained landfill will adequately capture, process, and remove leachate and landfill gas to prevent odors from escaping into the ambient air as fugitive emissions." (*Id.*).

Plaintiffs allege that Chambers failed to use adequate odor mitigation processes and technologies to control emissions from the Landfill. (*Id.* ¶ 26). As a result, noxious odors invaded Plaintiffs' and Class Members' properties. (*Id.*). Plaintiffs allege that Chambers' failure to prevent off-site emissions include, but are not limited to:

a) Failing to install, maintain, and operate an adequate landfill gas collection system;
b) Insufficient monitoring of the Landfill;
c) Using inadequate cover and cover practices;
d) Inadequate collection, management, and disposal of leachate;
e) Failing to purchase, possess, and maintain appropriate equipment;
f) Improper and/or excessive processing of construction and demolition waste;
g) Engaging in excavation without adequate erosion or sedimentation controls; and
h) [Failing] to use other odor mitigation and control techniques that are available.

(*Id.* ¶ 27). As a result, Plaintiffs allege that "Plaintiffs' property[,] including Plaintiffs' neighborhoods, residences[,] and yards have been and continue to be physically invaded by noxious odors, pollutants, and air contaminants." (*Id.* ¶ 12).

Plaintiffs allege that citizens in the nearby residential area have frequently complained about noxious odors emanating from the Landfill. (*Id.* ¶ 28). Specifically, Plaintiffs allege that numerous residents have filed complaints with the Pennsylvania Department of Environmental Protection ("PDEP") concerning the odors. (*Id.* ¶ 34). The Pitcairn Fire Department has been called to the area several times due to gas-like odors emitted by the Landfill into the community. (*Id.*). Betsy Stevick, the mayor of the Borough of Pitcairn, issued a formal letter to Pennsylvania Governor Joshua Shapiro requesting an investigation into the Landfill and its odor emissions. (*Id.*). Further, Franci stated that "he often experiences a lack of sleep from being continuously woken up by the odors emanating from [the] Landfill." (*Id.* ¶ 31). Bumbaugh reported that the "odor is so bad it makes the inside of your house smell." (*Id.* ¶ 32). Plaintiffs' complaint includes several allegations made by Class Members regarding the odor. (*Id.* ¶ 33).

3

Plaintiffs also contend that the noxious odors from the Landfill are offensive to them and Class Members and would be offensive to reasonable people of ordinary health and sensibilities. (*Id.* ¶ 36). The odors have "caused property damage" and "substantially interfered with the abilities of [Plaintiffs] and [Class Members] to reasonably use and enjoy their homes and properties." (*Id.* ¶ 37). Further, the invasion of Plaintiffs' and Class Members' properties by the noxious odors has reduced the value of those properties. (*Id.* ¶ 38). Members of the public were also allegedly harmed by the noxious odors that emitted from the Landfill into public areas. (*Id.* ¶ 40).

## II. STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.    ANALYSIS

### A. Sufficiency of Plaintiffs' Pleadings

    *i.    Private Nuisance*

Chambers argues that Plaintiffs' private nuisance claim (Count I) fails because Plaintiffs failed to plead that (1) Chambers' invasion caused significant harm, (2) Chambers' actions were either intentional and unreasonable or negligent and reckless as required, and (3) their property interests were encroached upon against their will. (ECF No. 6, pp. 7-8). Plaintiffs counter by arguing that (1) whether they suffered significant harm is a question for the jury – not the Court, (2) they plausibly plead that Chambers acted with the requisite state of mind, and (3) they adequately alleged encroachment of Plaintiffs' property interests. (ECF No. 19, pp. 12-14). Chambers responds that Plaintiffs improperly relied on outdated case law to support their contention that significant interference is a question for the jury, and Plaintiffs did not plead significant harm or tangible damage to their properties. (ECF No. 20, pp. 3-4). The Court holds that Plaintiffs adequately alleged the elements of a private nuisance claim under Pennsylvania law.[1]

---

[1] The parties do not dispute that Pennsylvania law substantively governs Plaintiffs' claims.

Pennsylvania follows the Restatement (Second) of Torts approach for determining whether a defendant's conduct constitutes a private nuisance. *Diess v. Pennsylvania Dep't of Transp.*, 935 A.2d 895, 905 (Pa. Commw. Ct. 2007). Under this approach, private nuisances are "nontrespassory invasion[s] of another's interest in the private use and enjoyment of land." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 821D (AM. L. INST. 1977)). "A private nuisance exists when a person's conduct invades 'another's interest in the private use and enjoyment of land,' and that invasion is either intentional and unreasonable or unintentional but negligent." *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 222-23 (3d Cir. 2020) (quoting *Youst v. Keck's Food Serv., Inc.*, 94 A.3d 1057, 1072 (Pa. Super. Ct. 2014)). An invasion is actionable under the doctrine of nuisance only if it causes "significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose." *Karpiak v. Russo*, 676 A.2d 270, 272 (Pa. Super. Ct. 1996) (citing RESTATEMENT (SECOND) OF TORTS § 821F (AM. L. INST. 1977)). A significant harm must involve more than "slight inconvenience or petty annoyance." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 821F cmt. c (AM. L. INST. 1977)). It must constitute a "real and appreciable interference with the plaintiff's use or enjoyment of his land." *Id.* The standard for determining whether an alleged invasion is significant is the "standard of normal persons or property in the particular locality. If normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable, then the invasion is significant." *Tiongco v. Sw. Energy Prod. Co.*, 214 F. Supp. 3d 279, 284 (M.D. Pa. 2016) (internal citations omitted). "It is for the trier of fact to determine whether there was a significant invasion of [a party's] enjoyment of their property, and, if such an invasion existed, whether the invasion was unreasonable." *Kembel v. Schlegel*, 478 A.2d 11, 15 (Pa. Super. Ct. 1984). A defendant's actions need not be injurious to health to be a nuisance. *Id.* (citing *Smith v.*

*Alderson*, 396 A.2d 808, 810 (Pa. Super. Ct. 1979) (stating that a nuisance may be found where there is an "unreasonable, unwarrantable, or unlawful use by a person of his own property which causes injury, damage, hurt, *inconvenience, annoyance or discomfort* to one in the legitimate enjoyment of his reasonable rights of person or property") (emphasis added)).

Plaintiffs pled that noxious odors emanating from the Landfill substantially and unreasonably interfered with their enjoyment of life and property by:

a) Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

b) Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

c) Depriving the Plaintiffs and Class Members of the value of their homes and properties; [and]

d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and discomfort including, but not limiting to, creating a reluctance to invite guests in their homes and preventing Plaintiffs and Class Members from utilizing the outdoor areas of their respective properties.

(ECF No. 1-3, ¶ 59). Chambers contends that Plaintiffs' "conclusory allegations more aptly describe a slight inconvenience and petty annoyance than significant and unreasonable interference." (ECF No. 6, p. 7). Chambers further argues that Plaintiffs pled "no noncompliance or violations by Chambers with the PDEP." (*Id.*).

A private nuisance may flow from the consequences of an otherwise lawful act. *Tiongco*, 214 F. Supp. 3d at 286 (citing *Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Prac. Knowledge*, 102 A.3d 501, 508–09 (Pa. Super. Ct. 2014)). Thus, whether Chambers complied with PDEP requirements is not dispositive of whether Chambers' activities constituted a significant invasion giving rise to a private nuisance. The private nuisance inquiry is not limited to whether Chambers' conduct violated a regulation, ordinance, or other requirement. The question is whether

Chambers' conduct constituted a significant and unreasonable invasion of Plaintiffs' use and enjoyment of their property.

Further, the Court disagrees with Chambers' contention that Plaintiffs' allegations are conclusory and threadbare. Plaintiffs did not merely recite the elements of private nuisance. Instead, Plaintiffs alleged specific interference with the use of their property – e.g., they were forced to keep the windows of their residence closed and they felt reluctant to invite guests to their property. (*See* ECF No. 1-3, ¶ 59). Accepting Plaintiffs' allegations as true and viewing them in the light most favorable to Plaintiffs, the Court holds that Plaintiffs plausibly alleged that odors from the Landfill caused significant harm to Plaintiffs' use and enjoyment of their property.

Chambers next argues that Plaintiffs failed to allege that Chambers' actions were either intentional and unreasonable or negligent and reckless as is required for liability to attach. (ECF No. 6, pp. 7-8). Plaintiffs counter that their complaint contains factual allegations adequately pleading that Chambers acted unreasonably and/or negligently. (ECF No. 19, p. 13). Plaintiffs also contend that Chambers acted intentionally because it continued to operate the Landfill with knowledge of its negative impact on the community. (*Id.*). The Court holds that Plaintiffs plausibly alleged that Chambers acted intentionally (in the context of private nuisance claims) when Plaintiffs alleged that Chambers had notice of the invasion of the community's land and continued to intentionally operate the Landfill.

As discussed above, private nuisance plaintiffs must demonstrate that the invasion was brought about by either intentional and unreasonable conduct, or unintentional conduct that is otherwise actionable under the rules controlling liability for negligence or recklessness, or for abnormally dangerous conditions or activities. *Tiongco*, 214 F. Supp. 3d at 284 (citing *Karpiak*, 676 A.2d at 272). A party commits an intentional invasion when he either "act[s] for the purpose

of causing it or know[s] that it is resulting or is substantially certain to result from his conduct." RESTATEMENT (SECOND) OF TORTS § 825 cmt. c (AM. L. INST. 1977); *see also McQuilken v. A&R Dev. Corp.*, 576 F. Supp. 1023, 1030 (E.D. Pa. 1983) (citing *Burr v. Adam Eidemiller, Inc.*, 126 A.2d 403, 422 (Pa. 1956)). A party generally possesses the requisite level of intent if he knows or is substantially certain "that the condition or activity is causing harm to another's interest in the use and enjoyment of land." *Tiongco*, 214 F. Supp. 3d at 284. When a defendant begins a course of conduct without knowing that his conduct is invading another's use and enjoyment of land but is later put on notice that such an invasion is resulting and does not abate his activities, further invasions may be considered "intentional." RESTATEMENT (SECOND) OF TORTS § 825 cmt. d (AM. L. INST. 1977) (explaining that in cases involving continuing or recurrent invasions, the "first invasion resulting from the actor's conduct may be either intentional or unintentional; but when the conduct is continued after the actor knows that the invasion is resulting from it, further invasions are intentional").

Plaintiffs pled that "[b]y constructing and then failing to reasonably repair, maintain, and operate the Landfill, thereby causing noxious odors to physically invade the Plaintiffs' and Class [Members'] properties, [Chambers] intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and Class [Members'] properties." (ECF No. 1-3, ¶ 61). Plaintiffs also alleged that Chambers "failed to use adequate mitigation strategies, processes, technologies, and equipment to control noxious odor emissions from the Landfill and prevent those odors from invading the homes and properties of [] Plaintiffs and [Class Members]." (*Id.* ¶ 26). Finally, Plaintiffs allege that Chambers "knew about its substantial noxious odor emissions through numerous complaints, warnings, and significant media attention throughout the Borough of Pitcairn." (*Id.* ¶ 41). Given the allegations discussed

above, Plaintiffs plausibly pled that Chambers knew or had substantial certainty that their conduct was invading Plaintiffs' use and enjoyment of their land. Thus, the Court holds that Plaintiffs plausibly alleged that Chambers acted intentionally in the context of their private nuisance claim. Since the Court holds that Plaintiffs plausibly pled that Chambers acted intentionally, the Court does not discuss whether Plaintiffs plausibly alleged that Chambers acted negligently or recklessly. *See Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 565 (3d Cir. 2002) (stating that "issues involving state of mind (*e.g.,* intent) are often unsuitable for a Rule 12(b)(6) motion to dismiss").

Finally, Chambers argues that Plaintiffs failed to allege that their property interests were "encroached by something that has come onto the property against their will." (ECF No. 6, p. 8). In other words, Chambers argues that Plaintiffs' allegations did not relate to a property interest. (*Id*.). Plaintiffs counter that "[b]oth Plaintiffs clearly allege odor experiences specifically impacting their private property interests." (ECF No. 19, p. 14). The Court holds that Plaintiffs plausibly alleged an invasion of their property interests.

Chambers correctly notes that private nuisance plaintiffs must plead that their "property interests have been encroached by something that has come onto the property against the plaintiff[s'] will." *Cavanagh v. Electrolux Home Prod.*, 904 F. Supp. 2d 426, 435 (E.D. Pa. 2012). Franci alleged that he "experiences a lack of sleep" because of the odors emitted from the Landfill. (ECF No. 1-3, ¶ 31). Bumbaugh alleged that the "odor is so bad it makes the inside of your house smell." (*Id.* ¶ 32). Chambers alleges that these allegations do not relate specifically to any property interest. Viewing the complaint in the light most favorable to Plaintiffs, the Court holds that these statements allege an encroachment of Plaintiffs' residences. Thus, Plaintiffs alleged that their properties have been encroached upon by odors that have come onto their property against Plaintiffs' will.

#### ii.    *Public Nuisance*

Chambers contends that Plaintiffs have not pled interference with a public right, requiring dismissal of their public nuisance claim (Count II).  (ECF No. 6, pp. 9-11).  Plaintiffs counter that they plausibly alleged interference of the public's right to unpolluted and uncontaminated air.  (ECF No. 19, p. 14).  The Court holds that Plaintiffs plausibly alleged interference with the right to fresh air in public spaces.

A public nuisance is an unreasonable interference with a right common to the public.  *Atl. Richfield Co. v. Cnty. of Montgomery*, 294 A.3d 1274, 1283 (Pa. Commw. Ct. 2023) (citing RESTATEMENT (SECOND) OF TORTS § 821B).[2]  Unlike reasonableness, which is a factual inquiry, whether a right is public is a question of law.  *Id.* at 1284 (citing *Machipongo Land & Coal Co. v. Com.*, 799 A.2d 751, 773 (Pa. 2002)).  In the context of public nuisance claims, a public right is necessarily collective.  *Id.*; *see also Greyhound Lines, Inc. v. Peter Pan Bus Lines, Inc.*, 845 F. Supp. 295, 302 (E.D. Pa. 1994) (explaining that, under Pennsylvania tort law, "the law of public nuisance comprehends threats to the public at large, not specific persons"). The Second Restatement gives the hypothetical example of pollution in a stream, which, if it "deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land," is not a public nuisance.  RESTATEMENT (SECOND) OF TORTS § 821B cmt. g (AM. L. INST. 1977).  "If, however, the pollution prevents the use of a public bathing beach or kills the fish in a navigable stream and so deprives all members of the community of the right to fish, it becomes a public nuisance."  *Id.*

---

[2] In public nuisance actions, Pennsylvania courts rely on the Restatement (Second) of Torts § 821B.  *Atl. Richfield Co. v. Cnty. of Lehigh*, 299 A.3d 181 (Pa. Commw. Ct. 2023).

*Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214 (3d Cir. 2020) is instructive in determining whether Plaintiffs plausibly alleged interference with a public right. In *Baptiste*, property owners sued a landfill owner, on behalf of themselves and a putative class of persons, asserting causes of action for, in part, public nuisance. The United States Court of Appeals for the Third Circuit noted that there is a public right to "fresh air in public spaces." *Baptiste*, 965 F.3d at 220. Moreover, the Third Circuit found that the plaintiffs properly alleged a public nuisance claim when they pled that odors emanating from a landfill caused significant discomfort and inconvenience when the odors invaded their community. *Id.*

Plaintiffs allege that Chambers' "noxious odors have interfered with the public's right to unpolluted and uncontaminated air" and that "[m]any members of the general public are impacted by the odors when they work, study, commute, shop, or engage in recreation in the Class Area." (ECF No. 1-3, ¶¶ 70, 75). Plaintiffs also allege that "[m]embers of the public, including, but not limited to, businesses, employees, commuters, tourists, visitors, minors, customers, clients, students, and patients have been harmed by the fugitive noxious odors emitted from the Landfill into public spaces." (*Id.* ¶ 40). Like in *Baptiste*, Plaintiffs alleged significant discomfort and inconvenience caused by offensive odors emitting from the Landfill into the surrounding area. Plaintiffs alleged that the odors interfered with the activities of the general public in the area. Given these allegations, the Court holds that Plaintiffs plausibly pled that Chambers significantly interfered with the public right to clean and uncontaminated air.

Chambers argues that the public right to clean air flows between the Commonwealth of Pennsylvania and its citizens. (ECF No. 20, pp. 4-5). Thus, it argues that Plaintiffs cannot rely on this right to establish a public nuisance claim. (*Id.*). Under *Baptiste*, private citizens may sue under a theory of public nuisance to vindicate their right to fresh air in public spaces. *Baptiste*,

965 F.3d at 220. Chambers is correct that "[b]ecause these rights are held in common by the public at large and no one owns them to the exclusion of others, the remedy for their infringement ordinarily lies 'in the hands of the state.'" *Id.* (quoting *Philadelphia Elec. Co. v. Hercules*, Inc., 762 F.2d 303, 315 (3d Cir. 1985)). However, "[w]hen a public nuisance interferes with an individual's personal rights, such as the right to use and enjoy private land, the aggrieved person has a private cause of action to remedy the infringement of his personal rights." *Id.* Stated differently, to sustain a private claim on a public nuisance theory, "a plaintiff must have suffered a harm of greater magnitude and of a different kind than that which the general public suffered." *Id.*; *see also Pennsylvania Soc. for Prevention of Cruelty to Animals v. Bravo Enterprises, Inc.*, 237 A.2d 342, 360 (Pa. 1968) ("[A] public nuisance may be enjoined at the behest of a private citizen or group of citizens, if . . . their property or civil rights[ ] are specifically injured by the public nuisance over and above the injury suffered by the public generally."). Chambers' argument that Plaintiffs cannot bring a claim for public nuisance to enforce the public right to clean air fails.[3]

### B. The Economic Loss Doctrine

The Court holds that Plaintiffs plausibly alleged physical injury sufficient for their negligence and private nuisance claims to survive Chambers' motion to dismiss. The viability of Plaintiffs' claims depends on whether the invasion of noxious odors onto an individual's property is a cognizable physical injury. Chambers argues that the Court must dismiss Plaintiffs' negligence and private nuisance claims under the economic loss doctrine because Plaintiffs have not pled any physical injury or property damage. (ECF No. 6, p. 12).[4] The Court need not, at this early stage

---

[3] Chambers did not argue that Plaintiffs did not suffer a harm of greater magnitude and of a different kind than what the general public suffered. Thus, the Court does not address this issue.

[4] Chambers separately argues that Plaintiffs' negligence claim fails because Plaintiffs have not alleged physical injury or damage to their properties. (ECF No. 6, p. 11). Because both arguments

of the proceedings, make a final determination as to whether the facts in this case bring Plaintiffs' claims within the orbit of the economic loss doctrine. It leaves for another day the question of whether the odor from the Landfill can be viewed as causing damage to or a physical invasion of Plaintiffs' property. The parties may revisit this issue at summary judgment with a more fulsome record on the nature of the alleged odor, its genesis and composition, and any other issue that might be relevant to the traditional economic loss doctrine analysis. As explained below, the Court leans toward predicting that the Pennsylvania Supreme Court would hold that the economic loss doctrine would not bar tort recovery in negligence and private nuisance cases arising from the type of circumstances this case presents.[5]

The economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Am. Stores Properties, Inc. v. Spotts, Stevens & McCoy, Inc.*, 678 F. Supp. 2d 328, 333 (E.D. Pa. 2009); *see also Spivack v. Berks Ridge Corp. Inc.*, 586 A.2d 402, 405 (Pa. Super. Ct. 1990). Economic loss has been defined as "damage for inadequate value, costs of repair and replacement of defective product, [and] consequential loss of property, without any claim of personal injury or damage to other property." *Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1269, 1276 (M.D. Pa. 1990). Moreover, the scope of the economic loss doctrine is not restricted to negligence actions; instead,

---

hinge on whether odor invasion constitutes a physical injury, the Court will address them in one analysis under the umbrella of the economic loss doctrine.

[5] In the absence of a controlling opinion from the Pennsylvania Supreme Court on an issue involving Pennsylvania law, federal courts must predict how that court would decide the issue. *Pac. Emps. Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 433 (3d Cir. 2012). Since the Pennsylvania Supreme Court has not decided whether the economic loss doctrine bars recovery in negligence and private nuisance cases dealing with noxious odors, air pollutants, and the like, this Court has approached the analysis as it believes the Pennsylvania Supreme Court would if presented with identical issues.

this doctrine extends to tort liability more generally. *Diehl v. CSX Transp., Inc.*, 349 F. Supp. 3d 487, 506 (W.D. Pa. 2018); *Duquesne Light v. Pa. Am. Water Co.*, 850 A.2d 701, 705 (Pa. Super. Ct. 2004) (discussing Pennsylvania's "strong, oft-stated public policy of barring recovery for economic losses sustained as a result of another's tortious conduct" including liability for private nuisance); *Moore v. Pavex, Inc.*, 514 A.2d 137, 139 (Pa. Super. Ct. 1986) (rejecting the contention that plaintiffs could recover under the law of private nuisance for purely economic harm). The economic loss doctrine applies to Plaintiffs' claims of negligence and private nuisance.[6]

In *Baptiste*, the Third Circuit expressly declined to consider whether "noxious odors, pollutants, and air contaminants" invading an individual's property constitutes physical injury sufficient to avoid the application of the economic loss doctrine. *Baptiste*, 965 F.3d at 228. The Court noted:

> Conceptually, it is not difficult to conceive how the presence of hazardous particulates in the air could constitute physical property damage if these pollutants infiltrate physical structures, as is the case when hazardous chemicals seep into private wells through contamination in groundwater. *See Ayers v. Jackson Twp.*, 525 A.2d 287, 294 (N.J. 1987); *see also Gates v. Rohm & Haas Co.*, No. CIV.A. 06-1743, 2008 WL 2977867, at *3 (E.D. Pa. July 31, 2008) ("[T]he physical presence of vinyl chloride [a hazardous substance] in the air, even if undetectable, constitutes a physical injury to the property for purposes of common law property damage claims."). Drawing all reasonable inferences in favor of the [plaintiffs], as required at the pleadings stage, the allegations in the complaint— namely that "landfill gas" and other hazardous contaminants have physically invaded the plaintiffs' property and "permeate[d] the walls"— may be enough to satisfy that requirement.

*Id.* at 229 n. 12. Absent controlling circuit precedent, district courts within the Third Circuit have reached different conclusions. Chambers relies mainly on the decision of the United States District

---

[6] The Court rejects Plaintiffs' argument that the economic loss doctrine is limited to products liability actions. *See Lower Lake Dock Co. v. Messinger Bearing Corp.*, 577 A.2d 631, 634 (Pa. Super. Ct. 1990) (stating that the economic loss doctrine "is not limited to products liability" actions).

Court for the Eastern District of Pennsylvania in *Lloyd v. Covanta Plymouth Renewable Energy, LLC*, 517 F. Supp. 3d 328 (E.D. Pa. 2021) for the contention that the invasion of noxious odors cannot by itself satisfy the economic loss doctrine. In *Lloyd*, the plaintiff brought claims for private nuisance, public nuisance, and negligence. *Id.* at 330. These claims arose from the defendant's operation of a waste-to-energy processing facility which plaintiffs alleged emitted noxious odors that invaded her and other residents' properties. *Id.* The plaintiff pled that the odors harmed her property due to the loss of its use and enjoyment, that noxious odors prevented her and her neighbors from engaging in outdoor activities, and that the odors forced her to keep her windows closed on certain days. *Id.* at 333. The plaintiff's claims in *Lloyd* are much like Plaintiffs' allegations here. The court cited to the Third Circuit's footnote in *Baptiste* to support its conclusion that the plaintiff failed to plead sufficient facts alleging physical injury or property damage to support her claim for negligence. *Id.* at 332.

On the other hand, in denying a defendant's motion to dismiss a plaintiff's negligence claim, a fellow judge of this Court "respectfully decline[d] to adopt the reasoning in *Lloyd*" which, in the court's view, read "too much into the [Third Circuit's] footnote" in *Baptiste*. *Childs v. Westmoreland Sanitary Landfill LLC*, No. CV 21-1100, 2022 WL 2073022, at *1 (W.D. Pa. June 9, 2022).

In *Flynn v. Shell Chem. Appalachia, LLC*, No. 2:24-CV-00193-MJH, 2024 WL 4664830 (W.D. Pa. Nov. 4, 2024), another fellow judge of this Court dismissed the plaintiff's negligence claim because the complaint did not sufficiently allege "the infiltration into Plaintiff's physical structure which has caused physical damage under a negligence theory." *Flynn*, 2024 WL 4664830, at * 3. The court looked to the Third Circuit's reference in the *Baptiste* footnote as an indication that, "in the industrial context," physical damage requires air pollutants to infiltrate

16

physical structures. *Id.* The court noted that one putative class member asserted that they had to perform "extra dusting" inside the house" since the plant at issue opened. *Id.* The court held that this allegation was not sufficient to establish physical infiltration because Plaintiffs did not aver any "precise connection" between the alleged extra dusting within the residence and damages for diminution of property value. *Id.*

The Court agrees with its colleague in *Childs* that the *Baptiste* footnote should not be read to require the physical infiltration or permeation of Plaintiffs' property by chemicals or noxious gases. The Court views it as significant that in *Baptiste* the Third Circuit favorably cited to *Gates v. Rohm & Haas Co.*, No. CIV.A. 06-1743, 2008 WL 2977867 (E.D. Pa. July 31, 2008). In *Gates*, the court held that "[w]here the invading substance is a hazardous chemical, to demonstrate interference with use and enjoyment of the property, a plaintiff must show either a physical invasion or an invasion by something otherwise perceptible to the senses, but not necessarily physical, like noise or vibrations." *Id.* at *3. The court "conclude[d] that the physical presence of vinyl chloride in the air, even if undetectable, constitutes a physical injury to the property for purposes of common law property damage claims." *Id.* (stating that "there is sufficient evidence in the record to establish that vinyl chloride is a carcinogen and thus a hazardous chemical, the Plaintiffs need only show that vinyl chloride was and continues to be physically present on their properties"). Chambers argues that *Gates* is distinguishable from the instant case because *Gates* involved a hazardous carcinogen. Here, Plaintiffs did not allege the presence of a hazardous carcinogen but "noxious odors" and "fugitive emissions." (*See e.g.*, ECF No. 1-3, ¶¶ 14, 17, 20, 26). Plaintiffs repeatedly alleged that Chambers "caused a physical invasion of the Plaintiffs' and putative Class [Members'] properties by noxious odors on frequent, intermittent, and reoccurring occasions too numerous to list individually." (*Id.* ¶¶ 42, 43, 84).

Even if the physical invasion of noxious odors cannot be construed as inflicting physical injury to Plaintiffs' property, the Court has doubts as to whether Pennsylvania's economic loss doctrine is applicable to Plaintiffs' claims. The well-established policy behind the economic loss doctrine is preventing open-ended tort liability. Because the economic consequences of many types of negligent conduct are far-reaching, a defendant who could be held liable for every economic effect of its tortious conduct would face virtually uninsurable risks, far out of proportion to its culpability. Thus, in a classic economic loss case, the doctrine is meant to prevent highly attenuated theories of proximate causation. By way of illustration, imagine a plaintiff who owns a restaurant in a resort area that generates most of its business from customers returning from the beach. An oil spill shuts down the beach. The restaurant's business drastically decreases. The restaurant owner sues the defendant who spilled the oil for negligence. This is a classic case where the economic loss rule bars recovery. The plaintiff suffered no actual personal injury or property damage. The business's losses were actually caused by the lack of customers. In this hypothetical, the oil spill was further upstream in the chain of ultimate causation than our law countenances. Whereas here, the harm complained of by Plaintiffs *is* directly caused by the noxious odors. One might say that the harm is the odor itself. Thus, Plaintiffs are alleging a direct harm to enjoyment of day-to-day life on their land. The harm is not caused by some distant event.

The Pennsylvania Supreme Court has recently exhibited a willingness to reconsider the extent of the economic loss doctrine. The Court permitted negligence claims to proceed even where the plaintiffs did not allege any personal injury or property damage. In *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018), employees sued their employer for, in part, negligence, after a data breach wherein the names, birth dates, social security numbers, tax information, addresses, salaries, and bank information of the employees were accessed and stolen from the employer's

18

computer systems. *Id.* at 499-501. The employer argued that the economic loss doctrine prevented the plaintiffs' recovery because they did not allege any physical injury or property damage. *Id.* at 502. The Pennsylvania Supreme Court held that the economic loss doctrine does not preclude all negligence claims seeking solely economic damages. *Id.* at 525. The Court permitted the plaintiffs to pursue damages in tort, despite the economic loss doctrine, even though the data breach did not cause any property damage or physical injury. *Dittman* is notable because it demonstrates that the Pennsylvania Supreme Court has taken a major step away from a strict application of the economic loss doctrine and permitted tort claims to proceed in cases where nothing approximating physical damage or personal injury occurred. Here, the alleged harm from the odor is arguably more direct, and physical, than the harm that might accrue to the *Dittman* plaintiffs due to the data breach.

Other courts have acknowledged the possible incongruity between the classic application of the economic loss doctrine and circumstances like those presented by this case. For example, in *Paulus v. Citicorp N. Am., Inc.,* No. 2:12-CV-856, 2013 WL 5487053 (S.D. Ohio Sept. 30, 2013), the plaintiffs sued a company that operated a data center near the plaintiffs' property. *Paulus,* 2013 WL 5487053, at *1. The plaintiffs alleged that the defendant's generators "produce[d] a loud, annoying noise that" they could hear "both inside and outside of their home" during all hours of the day. *Id.* They also alleged that the noise caused their windows to vibrate, forced them to close their windows "instead of enjoying the natural ventilation from the outside air," woke them up between the hours of 10:00 p.m. and 5:00 a.m., caused them sleep deprivation, which hurt their performance at work, and prevented them from "the quiet enjoyment of their home and yard during their leisure time." *Id.* The defendant alleged that Ohio law, which has an economic loss doctrine that is substantively identical to Pennsylvania, prevented the plaintiffs from recovering purely economic losses. *Id.* at *8. The court held that the plaintiffs' alleged damages

did not qualify as indirect economic loss, but rather *direct* economic losses which were not prevented by the economic loss doctrine.  The court held:

> [T]o the extent the [plaintiffs] assert purely economic damages, the damages are direct – they allege, for example, the lost value of their house as a result of conduct they see as tortious. This is not akin to consequential damages or lost profit, rather more in alignment with "the loss attributable to the decreased value of [a] product." Because these qualify as direct economic damages, the economic loss doctrine does not bar the claims at issue.

*Id.* (internal citations omitted).  In the alternative, the court noted that even if the plaintiffs' alleged damages were indirect, they arose "from tangible physical injury to persons or from tangible property" damage because "a diminished quality of life, sleep deprivation, and diminished performance at work" amount to harms that are "tangible, redressable, nuisance-related injuries." *Id.* at *9; *see also Little Hocking Water Ass'n, Inc. v. E.I. du Pont Nemours & Co.*, 91 F. Supp. 3d 940, 988 (S.D. Ohio 2015) (noting that the economic loss doctrine does not prevent recovery for economic losses which are "more akin to the decreased value of the product than to loss of profits or time"); *Avery v. GRI Fox Run, LLC*, 160 N.E.3d 155, 175 (Ill. App. Ct. 2020) (stating, in the context of a private nuisance claim, that "inconvenience, health issues, annoyance, discomfort, and the inability to fully use and enjoy" the plaintiffs' property cannot be characterized as economic losses or injury because the alleged damages are a form of personal injury).

Here, Plaintiffs have alleged damages for interference with the use and enjoyment of private property, loss of property values, and interference with Plaintiffs' activities in the area surrounding the Landfill.  (*See e.g.*, ECF No. 1-3, ¶¶ 29, 31-32, 36-37).  The parties dispute whether these damages are "purely economic loss" barring Plaintiffs from recovering under negligence and private nuisance theories of liability.  The parties further dispute whether Plaintiffs plausibly pled physical injury sufficient to sustain a negligence claim.  As discussed above, binding case law does not resolve whether invasion by noxious odors resulting in loss of enjoyment and

use of property constitutes non-economic physical injury.  However, the Third Circuit in *Baptiste* indicated that loss of real property value and interference with the use and enjoyment of property are not purely economic losses.  *Baptiste*, 965 F.3d at 222 n.4 ("The [plaintiffs] are not seeking economic losses, only real property damages, *i.e.*, loss of real property value and interference with the use and enjoyment of their homes and private land.").  Further, even if Plaintiffs' losses are solely economic, it is unclear whether the Supreme Court of Pennsylvania would hold that the economic loss doctrine prevents their recovery.  In light of the uncertainty in binding case law, the Court cannot now conclude, drawing inferences in Plaintiffs' favor, that loss of use of real property is a purely economic loss such that it is appropriate to dismiss Plaintiffs' negligence and private nuisance claims on the pleadings as a matter of law.  Nor can the Court conclude, at this time, that Plaintiffs' claims fall within the ambit of the economic loss doctrine.  Viewing all inferences in the light most favorable to Plaintiffs, the Court holds that Plaintiffs' plausibly alleged injuries or damages are sufficient for their negligence and private nuisance claims to survive Chambers' motion to dismiss.

### C.  Punitive Damages

Chambers next argues that Plaintiffs' allegations do not support an award of punitive damages.  (ECF No. 6, p. 15).  Chambers contends that "the pleadings do not demonstrate that Chambers had the requisite state of mind or that the conduct at issue is so outrageous as to call for the imposition of punitive damages."  (*Id.* at 16).  Plaintiffs counter that it is premature to strike Plaintiffs' claim for punitive damages.  (ECF No. 19, p. 19).  They argue that "the Court should reserve any decision on entitlement to punitive damages until the summary judgment stage, based on a complete record."  (*Id.*).  The Court will deny Chambers' motion because striking Plaintiffs' punitive damages claim at the motion to dismiss stage would be premature.

In Pennsylvania, "punitive damages are awarded for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others." *Judge Technical Servs., Inc., v. Clancy*, 813 A.2d 879, 889 (Pa. 2002) (emphasis and internal quotation marks omitted). "[P]unitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton[,] or reckless conduct." *Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005). "The state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." *Id.*

The Pennsylvania Supreme Court discussed punitive damages at length in *Phillips v. Cricket Lighters*, 883 A.2d 439 (Pa. 2005):

> Our case law makes it clear that punitive damages are an "extreme remedy" available in only the most exceptional matters. Punitive damages may be appropriately awarded only when the plaintiff has established that the defendant has acted in an outrageous fashion due to either "the defendant's evil motive or his reckless indifference to the rights of others. A defendant acts recklessly when "his conduct creates an unreasonable risk of physical harm to another [and] such risk is substantially greater than that which is necessary to make his conduct negligent."

*Phillips*, 883 A.2d at 445-46 (stating that punitive damages exist to "heap an additional punishment on a defendant who is found to have acted in a fashion that is particularly egregious") (internal citations omitted). The question of punitive damages is usually determined by the trier of fact and the Court may decide the issue only when no reasonable inference from the facts alleged supports a punitive award.[7] *Diehl*, 349 F. Supp. 3d at 509 (internal citations omitted).

---

[7] Plaintiffs contend that Chambers' motion to dismiss Plaintiffs' punitive damages claim "is not properly brought under Rule 12(b)(6) and instead can only be considered in the context of a Motion to Strike under Rule 12(f)." (ECF No. 19, p. 19). The Court will analyze Chambers' motion under Rule 12(b)(6). A Rule 12(f) motion to strike has "no application to a request for punitive damages, in that it does not constitute redundant, immaterial, impertinent, or scandalous matter." *Castelli-Velez v. Moroney*, No. 3:20-CV-00976, 2021 WL 978814, at *4 (M.D. Pa. Mar. 16, 2021) (internal citations omitted); *see also Jordan v. Wilkes-Barre Gen. Hosp.*, No. 07-CV-390, 2008 WL 3981460, at *4 (M.D. Pa. Aug. 22, 2008) (stating that courts should not use Rule 12(f) to dismiss requests for punitive damages).

Plaintiffs' request for punitive damages may proceed. Plaintiffs pled that Chambers "knowingly, recklessly, and with a conscious disregard for the rights of the Plaintiffs and Class [Members] allowed conditions to exist and perpetuate, which caused noxious odors to physically invade the Plaintiffs' and Class [Members'] properties." (ECF No. 1-3, ¶ 87). Plaintiffs also alleged that Chambers' "negligence was committed with a conscious indifference to the harm caused to the Plaintiffs' and Class [Members'] properties, which entitles the Plaintiffs and Class [Members] to an award for . . . punitive relief." (*Id.* ¶ 88). Moreover, Plaintiffs alleged throughout their complaint that Chambers acted "intentionally, knowingly, willfully, recklessly, and/or negligently" when it failed to properly "construct, maintain, and/or operate the Landfill" and when it "knew about its substantial noxious odor emissions through numerous complaints, warnings, and significant media attention . . . ." (*Id.* ¶¶ 41-42). The Court finds that Plaintiffs have adequately alleged that Chambers was aware of the Landfill's impact on the community and acted in conscious disregard of those impacts. If Plaintiffs' allegations are proven, punitive damages may be appropriate. Whether the facts ultimately support a request for punitive damages is a question for another day.

**D. Class Allegations**

Chambers argues that the Court should strike Plaintiffs' class allegations because the complaint demonstrates that individual issues will predominate, rendering class treatment inappropriate. (ECF No. 6, p. 16). Plaintiffs counter that (1) motions to strike class allegations at the motion to dismiss stage are "disfavored" and granted in rare cases; (2) striking class allegations based on predominance is "suspect"; and (3) Plaintiffs can prove that common issues predominate. (ECF No. 19, p. 20). Chambers responds that striking class allegations at the motion to dismiss stage is rare but appropriate in the instant case where "the factfinder would have to go property-

by-property throughout the entire class to make these individualized causation determinations." (ECF No. 20, p. 13).  At this stage of the proceedings, the Court will deny Chambers' motion because this is not the "rare case" where striking class allegations is appropriate.

The Court, either on its own or on motion made by a party, may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  When considering class allegations, the Court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).  In defending against a motion to strike class allegations, "[t]he plaintiff bears the burden of advancing a *prima facie* showing that the class action requirements of Rule 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Salyers v. A.J. Blosenski, Inc*., No. CV 23-4802, 2024 WL 1773368, at *2 (E.D. Pa. Apr. 24, 2024) (internal citations omitted).

"[A] motion to strike class allegations pursuant to Rule 23(d)(1)(D) seems, for all practical purposes, identical to an opposition to a motion for class certification, and the rule provides the procedural mechanism for striking class allegations . . . once the Court determines that maintenance of the action as a class is inappropriate." *Almond v. Janssen Pharms., Inc.*, 337 F.R.D. 90, 99 (E.D. Pa. 2020) (internal citations and quotation marks omitted).  However, here, unlike in the typical class certification motion, the parties have not begun much less completed discovery.  Because "[c]lass determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, and discovery is therefore integral," only in "rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met" should a court strike the class allegations at the motion to dismiss stage. *Salyers*, 2024 WL 1773368, at *2 (internal citations omitted); *Landsman & Funk*

*PC v. Skinder-Strauss Assoc.*, 640 F.3d 72, 93, 93 n.30 (3d Cir. 2011) (stating that, in relation to striking class allegations, "[i]n most cases, some level of discovery is essential).

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotation marks omitted). In order to become certified, a class must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. FED. R. CIV. P. 23(a). In addition, Rule 23 mandates that parties seeking class certification satisfy the requirements of one of the three subsections in Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614–15 (1997). To satisfy Rule 23(b)(3), which applies here, a party seeking certification must meet two requirements. *Id.* First, common questions must "predominate over any questions affecting only individual members." *Id.* Second, class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Id.*

Here, as discussed above, Plaintiffs seek to bring this action on behalf of "[a]ll owners/occupants and renters of residential property within one (1) mile of the Landfill property boundary." (ECF No. 1-3, p. 12). Chambers argues that Plaintiffs' class allegations should be struck under Rules 12(f) and 23(b)(3) because the complaint does not demonstrate that individual issues will predominate. (ECF No. 6, p. 16). Plaintiffs counter that numerous common issues will predominate including (1) whether and how Chambers emitted off-site nuisance odors; (2) the geographic extent to which those odors invaded the surrounding residential community; (3) whether Chambers acted negligently or unreasonably in emitting off-site odors; and (4) the degree of harm suffered by Plaintiffs and the Class Members. (ECF No. 19, p. 21).

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, a standard far more demanding than the commonality requirement of Rule 23(a)." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310-11 (3d Cir. 2008) (internal citations omitted).  However, predominance does not require absolute identity of the underlying claims. *See Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 304 (3d Cir. 2016).  "[I]f the court decides that the central, predominant issues in the case are common, then Rule 23(b)(3) is met despite the possibility that some subsidiary issues will require individualized evidence." *Id.*  Thus, the need for an individualized damage determination is not necessarily fatal to Rule 23(b)(3) certification. *Brockman v. Barton Brands, Ltd.*, No. 3:06CV-332-H, 2007 WL 4162920, at *9 (W.D. Ky. Nov. 21, 2007).  Further, motions to strike class allegations based on predominance are specifically disfavored at the motion to dismiss stage. *Landsman*, 640 F.3d at 93 ("Particularly when a court considers predominance, it may have to venture into the territory of a claim's merits and evaluate the nature of the evidence. . . . [A]llowing time for limited discovery supporting certification motions may . . . be necessary for sound judicial administration.") (internal citations omitted).  "To determine if the requirements of Rule 23 have been satisfied, a district court must conduct a rigorous analysis." *Id.* (internal citations and quotation marks omitted).

Plaintiffs argue that "[c]ommon issues predominate in air pollution cases when the paramount issue concerns whether a plant's emissions are substantially interfering with the local residents' use and enjoyment of their real and personal property."  (ECF No. 19, p. 20) (citing *Stanley v. U.S. Steel Co.*, No. 04-74654, 2006 WL 724569, at *7 (E.D. Mich. Mar. 17, 2006).  Chambers responds that "nuisance claims inherently raise individualized issues due, in part, to the fundamental maxim that each parcel of land is unique."  (ECF No. 6, p. 18) (citing *Navarro v. ExxonMobil Corp.*, No. CV 17-2477 DSF (SKX), 2022 WL 22248790, at *12 (C.D. Cal. July 5,

2022)). Plaintiffs pled that the following issues are common questions of law and fact that predominate over any individual questions affecting Class Members:

a) Whether and how [Chambers] wrongfully, intentionally, knowingly, recklessly, and/or negligently failed to maintain and operate the Landfill, causing noxious odors to invade their properties;
b) Whether [Chambers] owed any duties to the Class Members;
c) Which duties [Chambers] owed to the Class Members;
d) Which steps [Chambers] has and has not taken in order to control the emission of noxious odors through the maintenance and operation of the Landfill;
e) Whether and to what extent the Landfill's noxious odors were dispersed over the Class Area;
f) Whether it was reasonably foreseeable that [Chambers'] failure to properly maintain and operate the Landfill would result in an invasion of the Class Members' property interests;
g) Whether the degree of harm suffered by the Class Members constitutes a substantial annoyance or interference with their use and enjoyment of their properties; and
h) The proper measure of damages incurred by the Class Members.

(ECF No. 1-3, ¶ 48).

At this early stage, Plaintiffs have met their burden of advancing a *prima facie* showing of predominance. Reading the complaint in the light most favorable to Plaintiffs, the above allegations adequately plead that Plaintiffs' claims are sufficiently cohesive so as to warrant adjudication by representation. The parties may revisit this issue at the class certification stage. A more fulsome record is necessary for the Court to conduct the rigorous analysis it is tasked with to determine predominance. It needs more than speculation and supposition to determine whether issues common to the putative class will predominate in this litigation.

Chambers also advances an argument for striking the class allegations that goes to the class definition. It argues that Plaintiffs' class allegations should be struck because Plaintiffs failed to plead facts showing why the one-mile geographical boundary is proper. (ECF No. 6, p. 20 n. 11). Issues regarding class definition are best decided at the class certification stage, not on a motion

to strike. *Webb v. Circle K Stores Inc.*, No. CV-22-00716-PHX-ROS, 2022 WL 16649821, at *3 (D. Ariz. Nov. 3, 2022) ("The proper stage for fine-tuning the class definition is certification, not pleading."); *Corbett v. Pharmacare U.S., Inc.,* 544 F. Supp. 3d 996, 1013 (S.D. Cal. 2021) (denying a defendant's motion to strike class allegations based on the argument that the class was overbroad because "[p]laintiffs should be given an opportunity through discovery to demonstrate that a . . . class is viable at the class certification stage"). The Court recognizes that it may reject the proposed class if Plaintiffs failed to identify a logical reason for the one-mile geographic boundary. However, the Court notes that a geographic boundary transforms the class from being one whose outer limits were determined by long-term transient movements of the wind and odors (which is obviously not ascertainable), to being a proposed class whose outer limits are definite. The one-mile geographic boundary, *at this early stage*, is sufficient. After reviewing evidence as the record develops, the Court will be in a better position to decide whether Plaintiffs' proposed class definition succeeds or fails. Since it is not facially apparent that Plaintiffs' proposed class is not ascertainable, the Court will deny Chambers' motion to strike on that ground.

Finally, Chambers takes issue with Plaintiffs' class allegations because Plaintiffs do not include a relevant time period. (ECF No. 6, p. 20 n. 11). According to Chambers, "[i]t is unclear whether the proposed class includes residents going back five months or fifty years." (*Id.*). Plaintiffs did not include any class period limiting Chambers' alleged liability to a certain time period anywhere in their complaint. (ECF No. 1). At a later stage, the failure to propose an appropriate time limitation in defining the class period will usually result in a finding that the class is impermissibly overbroad and not ascertainable. *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394 (AJN), 2017 WL 1331288, at *5 (S.D.N.Y. Apr. 4, 2017) (denying a class certification motion because the proposed class lacked "an expressly defined class period,

and, indeed, any meaningful temporal limitation at all"); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, No. 05 C 2623, 2007 WL 4287511, at *4 (N.D. Ill. Dec. 4, 2007) (denying a plaintiff's motion for class certification in part because the proposed class "contain[ed] no time limitation or indication of what the class period would be"). The Court notes that both of these cases pertain to denial of class certification motions, not motions to strike class allegations. Given the hesitancy of courts in the Third Circuit to strike class allegations before a class certification motion is filed, and because this is not the "rare case" where no amount of discovery will allow Plaintiffs to resolve deficiencies in class definitions under Rule 23, the Court will not strike Plaintiffs' class allegations prior to learning more about the nature of the claims at issue. *See Samuel v. Centene Corp.*, No. CV 23-1134-JLH-SRF, 2024 WL 3552869, at *14 (D. Del. July 26, 2024) (The ascertainability inquiry, which requires Plaintiffs to identify objective, reliable criteria for identifying class members, is [] more appropriately addressed after fact discovery.").

## IV.    CONCLUSION

For the forgoing reasons, the Court will deny Chambers' motion. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

_12/16/24_____
Dated